W. W. NASH v. THE MANISTEE LUMBER COMPANY.

*Settlement—Fraud or mistake—Unconscionable advantage—Evidence*
*—Deposition—Copy of bill of sale.*

1. A copy of a bill of sale attached to a deposition by the commis-
   sioner, pursuant to an interrogatory calling for the production
   of the original and the attachment of said copy, is competent
   evidence without the production of the original paper.
2. Courts cannot disturb a compromise between parties, unless upon
   satisfactory evidence of mistake or fraud, or of an unconscionable
   advantage taken by one over the other.

Error to Manistee.   (Judkins, J.)   Argued April 17, 1889.
Decided June 21, 1889.

Assumpsit.   Defendant brings error.   Affirmed.   The facts
are stated in the opinion.

*Dovel, Smith & Smurthwaite,* for appellant.
*Ramsdell & Benedict,* for plaintiff.

LONG, J.   On September 2, 1886, defendant, doing busi-
ness at Manistee, Michigan, entered into a written contract
with Young & Nash, of Ottawa, Illinois, for the sale and
delivery at Chicago, Illinois, of a quantity of lumber, and
piece and bill stuff.   The piece and bill stuff was to be priced
at Chicago market on day of delivery there, and the lumber
at $15 per M. feet.   The terms of sale were one-fourth cash
on delivery, and 30-day note for balance.

The plaintiff was one of the firm of Young & Nash, and
executed the contract for the firm, but, before doing so, vis-
ited Manistee, and saw the lumber piled on defendant's dock.
The piece and bill stuff had not yet been cut, but was to be
manufactured according to specification contained in the con-
tract, and the whole to be tallied by Manistee inspectors.   No

guaranty of quality of lumber was made, but it was to be sold on straight tally.

. The defendant manufactured the piece and bill stuff, and it, with the lumber, was tallied, and on September 8, 1886, it shipped the whole, by schooner Toledo, to Chicago, and on September 11 forwarded the bill for the lumber to Young & Nash.

On September 15, Young & Nash wrote defendant, inclosing payment of one-fourth of the purchase price of the whole cargo, according to the contract, and complaining of the quality of the lumber shipped. Defendant replied September 20, assuring them that it had shipped the identical lumber sold, and fully performed its contract. Young & Nash wrote again September 22, desiring to submit the matter to a Chicago inspector. The defendant wrote that it had nothing to submit to any inspector, as the contract had been fully complied with on its part. October 4, Young & Nash wrote again, declaring that defendant must accept the offer made,—the amount of the bill, as rendered, less $1 per M. on the lumber and 50 cents on piece stuff,—or they would hold the same, subject to defendant's order, and the payment of freight and money paid by them. To this letter defendant replied as follows:

"As you have got our lumber, of course you have the advantage of us, and you appear to know it, and your letter indicates that we must take what you feel disposed to pay us. As the 30 days will be up shortly, on the eleventh or twelfth, send us check."

October 13, Young & Nash wrote inclosing check for $2.546.89, being the amount of the purchase, less the above deductions. In this letter they stated:

"If you care to have any further dealings with us, we would like to contract for 100 M. No. 1 Norway bottoms, same as last lot. If you care to sell them please advise."

On June 7, 1887, the parties entered into a new contract

in writing, by which the defendant agreed to sell to Young & Nash all the No. 1, 11 and 12 feet Norway pine wagon boards it should manufacture during the season of 1887, up to about 100 M. feet, at $16 per M., delivered at Chicago, to be paid, $6 per M. on signing agreement, and the remaining $10 per M., and one-half cost of inspection, on arrival of vessel at Chicago having any or all of such lumber on board, etc.

Upon the completion of this contract, Young & Nash remitted to the defendant the sum of $600. Defendant shipped all the wagon boards manufactured by it that season, when on November 10, 1887, W. W. Nash wrote it as follows:

" Please advise whether you expect to send any more Norway boards this fall. There is a balance due of 30 M. feet on the 100 M. feet contract. If you can make another shipment very soon, we would be glad to have them; but, if not soon forwarded, the canal will close for the winter, and we would then not want to receive any more lumber until spring. We will probably want as many as 100 M. of the Norway boards for next season, and should you have any considerable quantity accumulated this fall, too late for shipment, we can probably make an arrangement with you to take them in the spring. Please let us hear from you."

On November 12, the defendant answered this letter as follows:

"It is not likely that we shall make any more wagon boards during the season; that is, not enough to speak of. There has been so much call for 12-feet stuff of other dimensions that we have not made very many for some time, and it does not now appear probable that we shall make many next year. We have taken the liberty to apply the remainder of the $600 not exhausted on the wagon boards to the payment of the balance due us on the shipment of last year, and interest thereon, which we trust will be satisfactory."

This balance, with interest added, amounted to about $200. Afterwards, Nash, claiming to have succeeded Young & Nash, brought this suit to recover from defendant the balance of the $600 so kept back by it and applied upon the old account, which plaintiff claimed had been compromised and

settled in full.    This amount kept back and so applied by the defendant is conceded to be the sum of $208.21, and for which plaintiff had verdict and judgment in the court below. Defendant brings error.

On the trial in the court below the deposition of the plaintiff, taken in Illinois, was produced and read by his counsel, from which it appears that Young & Nash carried on a retail lumber business at Ottawa, and had a business office in Chicago.

In answer to an interrogatory the witness stated that he purchased the interest of Young in the business, and that such purchase was evidenced by a bill of sale.    The witness produced the bill of sale to the commissioner, who made a copy thereof, and attached it to the deposition.    This was done in compliance with the instructions contained in the interrogatory.    This bill of sale, as shown by said copy, was executed on November 2, 1887, and conveys all the interest of Young in the capital stock, stock on hand, and bills receivable in the business to Nash, the plaintiff.

Defendant objected to the reading of the answer to this interrogatory, and the copy of the bill of sale, for the reason that the copy was not the best evidence.    The court overruled the objection, and permitted the answer and bill of sale to be read.

In this the court was not in error.    The deposition was taken under the following stipulation signed by the attorneys of the respective parties:

"It is hereby stipulated, in the above-entitled cause, between the respective parties thereto, by their attorneys, that the deposition of W. W. Nash, of Ottawa, Illinois, may be taken under oath before Clarence Griggs, special commissioner for that purpose, on the direct and cross interrogatories hereto annexed, as testimony in behalf of the plaintiff.    The same, when so taken, may be transmitted by said commissioner to the clerk of the court, and may be used on the trial of this cause, subject to the same objections as if taken in open court."

The interrogatory to which the answer was made is as follows:

"If you claim that you have succeeded to the rights and interests of the firm of Young & Nash, and, in particular, to the rights of said firm in the agreement with the defendant, set forth in the declaration, state fully how this was; produce any written evidence you have before the officer taking the deposition, and allow him to attach a copy thereof."

Under this interrogatory the witness produced the bill of sale, and the commissioner attached the copy. We think this is of the same effect, under this interrogatory and the stipulation attached, as if the original on the trial had been brought into court, identified, and a copy left by agreement for convenience. It is evident that counsel for plaintiff, in preparing this interrogatory, intended to have a copy of this identical paper made and attached, to be used as evidence; and the stipulation signed by defendant's counsel refers to the interrogatory as attached.

It is true, the original paper is the best evidence of the facts contained in it, yet, under the circumstances here, it is very evident that defendant's counsel were not claiming that the paper was not an exact copy, but were seeking to avoid the effect of their stipulation by a technicality. No excep_tion was taken to the interrogatory at the time the stipulation was signed, and defendant made no demand for the original. The copy was properly received in evidence.

The real defense to the claim of plaintiff, however, is that, at the time the new contract was entered into, in 1887, between the parties, the defendant had a claim against Young & Nash growing out of the sale of 1886, and that it had the right to retain sufficient of this $600, paid as the first installment on the contract of 1887, to meet that claim.

The defendant claimed that the lumber, piece and bill stuff, shipped in 1886, was in full compliance with the contract, and that the claim made by the plaintiff that it did not so comply with the contract was entirely groundless, and not

made in good faith, but was made for the purpose of taking advantage of the situation of the parties, and a fraud upon it, and by which it was compelled to receive a less amount than the lumber was actually worth, and that the money was not actually paid in such a way as to amount to a compromise and satisfaction of its claim.

The secretary of the company, Mr. Wente, testified that at the time of accepting the proposition made by Young & Nash to take off the $1 per M. on the lumber, and 50 cents per M. on the bill stuff, they concluded to take what they could get for the time being, and take chances on the future to get the balance.

Defendant also gave evidence tending to show that the piece and bill stuff was in accordance with the contract, and that the lumber was seen by Mr. Nash, before the purchase, as it lay in piles upon the dock; that only such lumber was shipped as Nash selected; and that he made no claim that any guaranty of quality was ever made by defendant.

The plaintiff's claim is, and he gave evidence tending to show the fact, that the lumber shipped under the contract of 1886 was not in compliance with the contract, but was of less value, and not of the quality for which they bargained; that they found fault with it, and notified the defendant, and finally offered to pay a certain price, which the defendant accepted, and that money was paid, and no fault found with it until the defendant set up the claim in its letter in 1887.

On this question the court instructed the jury as follows:

"If these two men in Illinois made an unfounded claim (they claim here this lumber was not according to contract), and made that knowingly, knowing there was no color of right to it, but asserted an unjust claim, and induced the parties to compromise, under the circumstances, in order to avoid litigation, etc., it would not be binding on the company here; but, if these two men did find fault with the lumber, and had good reason for finding fault, if it did not comply with the co.tract, and they talked about it, and they

finally made this offer in good faith, and these parties said, 'We will take the money,' and took it, they are bound by the contract, because, in that case, there would be a valid dispute between the parties, settled up by agreement.   *   *   *   On the other hand, if it were a fraudulent scheme on the part of these parties to beat defendant out of money, it would not be binding.''

Defendant's counsel submitted several requests to charge upon this part of the case, which the court refused to give. We see no error in this refusal.   The parties tried the case upon the issue so made, and the court submitted the case to the jury upon this theory, and, as we think, very fairly to the defendant.   The requests to charge were many of them covered by the general charge, and those not covered the court was not in error in refusing.

The defendant accepted the money tendered by Young & Nash as a settlement under the contract of 1886.   It made the settlement deliberately, but claimed that it was coerced into making it, from the fact that the parties resided in another state, and it was cheaper to settle than to litigate, though the deduction claimed from the price of the lumber and bill stuff was wrongful and fraudulent.   If this theory was true, it had an opportunity to make it appear to the jury, and the jury were very fully and fairly instructed, if they found this to be true, they should find for the defendant; but it appears that the jury found in favor of plaintiff's theory that some deduction should have been made, and that Young & Nash were acting in good faith in making the claim.

Courts cannot disturb a compromise between parties, unless on satisfactory evidence of mistake, fraud, or unconscionable advantage. *Gates v Shutts,* 7 Mich. 127; *Converse v. Blumrich,* 14 Id. 120; *Hull v. Swarthout,* 29 Id. 250; *Craig v. Bradley,* 26 Id. 354; *Prichard v. Sharp,* 51 Id. 432 (16 N. W. Rep. 798).

The jury settled this question, and we cannot disturb it.

We find no error in the record, and the judgment of the court below must be affirmed, with costs.

The other Justices concurred.