940 F.2d 661
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Frank McKELVIE, Sharon McKelvie, Plaintiffs-Appellants,
Cross-Appellees,
v.
CITY OF MOUNT CLEMENS, Defendant-Appellee,
Florence Cement Company, Defendant-Appellee, Cross-Appellant.
 Nos. 90-1430, 90-1448.
 United States Court of Appeals, Sixth Circuit.
 July 30, 1991.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 Plaintiff, Frank McKelvie, was involved in a car accident at the intersection of New Street and Pine Street in the City of Mount Clemens, Michigan, early in 1985. Plaintiff's car was struck on the right side by another vehicle and then collided with a pole, and he was seriously injured as a consequence.
 
 
 2
 McKelvie and his wife, Sharon, along with their three children, instituted a cause of action in Michigan state court against defendant, the City of Mount Clemens in March of 1986. In 1988, the same plaintiffs filed a separate suit arising out of the same accident against defendant, Florence Cement Company. Still later, McKelvie and his wife filed a cause of action in federal court against General Motors and Detroit Edison.[1] An amended complaint, however, in federal court added Mount Clemens and Florence Cement as defendants. Mount Clemens had asserted accord and satisfaction as an affirmative defense, but Florence Cement failed to raise this affirmative defense. Upon plaintiffs' motion, they were permitted to dismiss their actions in state court without prejudice.
 
 
 3
 Following this state court dismissal, Mount Clemens and Florence Cement moved for summary judgment, arguing that there was no material issue of fact as to whether an accord and satisfaction had been established, and the district court granted the motions of both defendants.
 
 
 4
 Plaintiffs made a motion for reconsideration. Along with its response to this motion for reconsideration, Florence Cement also moved to amend its answer so as to include accord and satisfaction as an affirmative defense. The district court denied plaintiffs' motion to reconsider, issuing a memorandum opinion stating its reasons for its action. The district court, however, denied Florence Cement's motion to amend without explanation.
 
 
 5
 Plaintiffs now appeal the grant of summary judgment to both defendants.[2] Florence Cement cross-appeals the court's denial of its motion to amend its answer. We REVERSE.
 
 
 6
 On May 6, 1988, plaintiffs' attorney in the Michigan state court proceedings, sent to Mount Clemens' counsel a letter indicating that plaintiffs accepted the City's proposed $10,000 settlement offer, stating:
 
 Dear Mr. Ryan:
 
 7
 My clients will accept your offer of $10,000 in settlement. I will get back to you on how the check should be drawn up.
 
 
 8
 Thank you for your cooperation.
 
 
 9
 The letter was signed by plaintiffs' then counsel, Rusing.
 
 
 10
 The City's attorney responded promptly: "This is a total and complete settlement of this matter as against my client, the City of Mount Clemens.... Your clients will indemnify and hold harmless the City of Mount Clemens."
 
 
 11
 Rusing then sent a letter to counsel for defendant, Florence Cement, including the following language, but indicating interest in such an offer, stating:
 
 
 12
 At this point, my clients are not sure about the settlment and want to give it some thought before they agree to your settlement offer of $10.000. I have indicated to them the offer, but as of this time, I would suggest that you proceed with this case as if no settlement were derived at.
 
 
 13
 On May 20, 1988, however, Rusing indicated to Florence Cement that plaintiffs would settle $15,000:
 
 
 14
 Kindly be advised that I discussed this matter with my clients again and they are agreeable to accepting $15,000 in settlement from your client. In my opinion this is a small amount considering the nature of my clients' injury, which consists of a complete quadriplegia. My clients, however, are aware of the fact that they can receive a much higher verdict, the same amount or nothing at all. They both advise me that they are agreeable to accepting the settlement in the amount of $15,000. If your company is still willing to enter into the settlement, then please let me know. If they are not, then please let me know as well and I will proceed with further discovery and trial preparations. If the case can be settled, then I would appreciate your making a check out for $100.00 payable to Barbara McKelvie, $100.00 payable to Kathleen McKelvie, $100.00 payable to Frank McKelvie, parent of Daniel McKelvie, and $14,700 payable to Frank McKelvie and Sharon McKelvie.
 
 
 15
 Thank you for your usual courtesy and cooperation.
 
 
 16
 The Mount Clemens attorney wrote another letter about a week later purporting to confirm the settlement of $10,000 but he allocated $100 of the total to each of the children, and the remaining $9,700 to Frank and Sharon McKelvie. This letter enclosed "the necessary releases."
 
 
 17
 Frank McKelvie testified that he accepted no offer to settle with either Mount Clemens or Florence Cement. Sharon McKelvie testified that she had received information concerning settlement offers, but she informed Rusing that she would not accept the sums offered.
 
 Rusing's affidavit indicated:
 
 18
 [I] never, at any time, discussed, nor contemplated, nor agreed, on behalf of the plaintiffs to any indemnification of the City of Mt. Clemens nor any other party; and, further, I never discussed, contemplated, nor agreed to the release of "all other persons, firms, employers, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, cost, loss of service, expenses and compensation whatsoever."
 
 
 19
 He also indicated under oath that by way of a telephone conversation with defense counsel, he "expressly and unequivocally revoked and repudiated any and all settlement offers and proposals" before they were consummated. Plaintiffs did not produce this Rusing affidavit, however, until after the grant of summary judgment. It was submitted with plaintiffs' motion for reconsideration.
 
 A. Florence Cement's Cross-Appeal
 
 20
 Plaintiffs argue that Florence Cement waived its affirmative defense of accord and satisfaction because it did not plead the defense in the first responsive pleading, and thus Florence Cement was precluded from seeking summary judgment on that basis. Florence Cement contends that the district court erred when it denied its motion to amend the answer to include accord and satisfaction as a defense.
 
 
 21
 Amendment of pleadings may and should be granted to conform to the proceedings and raise issues already addressed on the merits. Fed.R.Civ.P. 15(b). When issues not raised by the pleadings are raised by express or implied consent of the parties, the issues may be treated in all respects as if they had been raised in the pleadings. Id. That same Rule provides that amendment may be sought after judgment, but failure to amend does not affect the result. We conclude that the district court should have allowed Florence Cement's amendment, although its failure to do so does not preclude the grant of summary judgment.
 
 
 22
 The issue of accord and satisfaction was litigated by plaintiffs and defendants before the district court. Plaintiffs impliedly, therefore, consented to the naming of this defense by Florence Cement. The latter's summary judgment motion was specifically based on the claim of accord and satisfaction. This issue was argued before the district court. Plaintiffs opposed the summary judgment on the merits, without ever raising an objection that this issue was not raised by the pleadings of Florence Cement. Plaintiffs therefore are precluded from claiming that we should not consider accord and satisfaction on behalf of both defendants.
 
 B. Mount Clemens
 
 23
 Plaintiffs claim that the question whether there was an accord and satisfaction had been litigated and determined by the state court, precluding the district court from deciding the issue anew. Plaintiffs moved for voluntary dismissal in state court based on plaintiffs' filing of a similar claim in federal court. Plaintiffs now argue that the state court "implicitly" decided whether there had been an accord and satisfaction by granting the motion to dismiss without prejudice. Because both defendants opposed dismissal without prejudice based upon the claim that a settlement had been reached, plaintiffs argue that the state court's court action (dismissal without prejudice) must, by reasonable inference, be based on accord and satisfaction.[3] We disagree.
 
 
 24
 The state judge did not expressly consider this issue when granting plaintiffs' motion. Indeed the state court judge stated that it should be left to the federal court to decide. Since the state court explicitly declined to rule on this issue, the district court properly considered the issue.
 
 
 25
 2. Settlement in Michigan without express authority or ratification
 
 
 26
 Whether an attorney can settle a case without his or her client's express authority is the crux of this case. The district court relied on M.C.R. Sec. 2.507(H) in concluding that the attorney has the right to make a binding settlement. Because the court was convinced that a material issue of fact concerning the attorney's intention to enter the settlement did not exist, it granted summary judgment in favor of defendants. On the other hand, however, if a client must expressly authorize his or her attorney to enter into such an agreement, the giving of such authorization is a genuine issue of material fact and summary judgment was improper.
 
 
 27
 Michigan Court Rules Sec. 2.507(H) provides:
 
 
 28
 An agreement or consent between the parties or their attorneys respecting the proceedings in an action, subsequently denied by either party, is not binding unless it was made in open Court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.
 
 
 29
 M.C.R. Sec. 2507(H) is a Michigan court rule. We are satisfied that the district court erred in relying on a rule of Michigan court procedure. See Energy Acquisition Corp. v. Harbor Ins. Co., No. 68910341 CA, slip op. at 8 (W.D.Mich. Sept. 4, 1990) (district court expressing doubts as to whether Sec. 2.507(H) applies to a federal diversity action).
 
 
 30
 Michigan Court Rule Sec. 2.507(H) is not a rule of substantive law. The court rule in question does "govern practice and procedure in all courts established by the constitution and laws of the State of Michigan." M.C.R. Sec. 1.103 (emphasis added). Under the Erie doctrine, federal courts sitting on diversity apply substantive laws of the state, not procedural laws of court.
 
 
 31
 Defendants assert that because the purported agreement occurred during the course of proceedings in a Michigan court, the district court was obligated to "consider the effect of the governing Michigan rules of practice and procedure upon the substantive principle of Michigan law to be applied." We do not agree. To accept this argument would, in effect, create a rule that when a case is dismissed in state court and later filed in federal court, the federal court is obligated to consider the effect of Michigan procedural rules, such as time requirements or method of service, on substantive principles of the state law.
 
 
 32
 In Michigan, the general substantive rule is that an attorney is presumed to have authority to act on his client's behalf. Jackson v. Wayne Circuit Judge, 341 Mich. 55, 67 N.W.2d 471 (1954). An attorney must have specific authority from the client, however, to settle a case. Henderson v. Great Atlantic & Pacific Tea Co., 374 Mich. 142, 132 N.W.2d 75 (Mich.1965). See also Presnell v. Board of County Road Comm'rs, 105 Mich.App. 362, 306 N.W.2d 516, 518 (1981). The district court therefore erred in granting summary judgment to defendants based on accord and satisfaction.
 
 
 33
 We review de novo a district court's grant of summary judgment, "apply[ing] the same test as that used by the district court in reviewing a motion for summary judgment." Berlin v. Michigan Bell Tel. Co., 858 F.2d 1154, 1161 (6th Cir.1988) citing Hand v. Central Transport, Inc., 779 F.2d 8, 10 (6th Cir.1985). When considering a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the inference to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987). The nonmoving party, nevertheless, bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e).
 
 
 34
 "The judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). However, " '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.' " Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir.1989) (quoting Anderson, 477 U.S. at 252).
 
 
 35
 Defendants rely on our decision in Capital Dredge & Dock v. City of Detroit, 800 F.2d 525 (6th Cir.1986), on the question of the authority of plaintiffs' attorney to settle the case. We stated:
 
 
 36
 Generally, when a client hires an attorney and holds him out as counsel representing him in a matter, the client clothes the attorney with apparent authority to settle claims connected with the matter.
 
 
 37
 .............................................................
 
 
 38
 ...................
 
 
 39
 * * *
 
 
 40
 The court of Michigan have evidently not specifically addressed the apparent authority question in the attorney-client context. In Michigan National Bank v. Kellan, supra, the Michigan Court of appeals held that an attorney had no apparent authority to bind a partnership (whose partnership agreement the attorney had written) in dealings with third parties. However, the court noted that the attorney worked for one of the partners individually and was not hired by the partnership to handle the matter that the third parties presented. In Wells v. United Savings Bank, 286 Mich. 619, 282 N.W. 844 (1938) and Peoples State Bank v. Bloch, 249 Mich. 99, 227 N.W. 778 (1929), the Michigan Supreme Court held that an attorney has no implied authority to settle or compromise a matter, but the court did not reach the question of apparent authority.
 
 
 41
 800 F.2d at 531.
 
 
 42
 While we indicated in Capital Dredge, 800 F.2d at 532, that Michigan would adopt the general rule set out above, we also noted that the party challenging the agent's authority "has not argued that Altere [the supposed agent] lacked authority to negotiate a settlement." The position of plaintiffs and that of Capital Dredge are, therefore, different in the positions taken before the court concerning authority of an attorney to settle claims without consent of his client. The majority opinion in Capital Dredge conceded that the Michigan courts had rejected an attorney's implied authority to settle without express approval of his client, and "have not specifically addressed the apparent authority question." Id. Capital Dredge has only since been cited by one court (a South Dakota state court). It has never been cited by a court within this circuit nor by a Michigan state court. It was clear in Capital Dredge that we were uncertain about the result, if addressed by the Michigan courts. We acknowledge, moreover, that Michigan National Bank v. Patman, 119 Mich.App. 772, 327 N.W.2d 355 (1982), and Coates v. Drake, 131 Mich.App. 687, 346 N.W.2d 858 (1984), hold that "a settlement, made by an attorney without prior special authorization ... by the client, is not binding on the client." Id. at 532. See also Gojcaj v. Moser, 140 Mich.App. 822, 366 N.W.2d 54 (1985) (a case not noted in Capital Dredge; order approving settlement controverted for lack of attorney authority reversed and set aside).
 
 
 43
 Another case bearing on this question decided by a Michigan court, where a purported settlement had been entered by attorneys in open court, was Presnell v. Board of County Road Comm'rs., 105 Mich.App. 362, 306 N.W.2d 516 (1981). This case, apparently overlooked or in any event not cited by the majority in Capital Dredge, stated:
 
 
 44
 As another general rule, it has been said that "attorney who has the conduct of a lawsuit is presumed to have authority to act on his client's behalf". Jackson v. Wayne Circuit Judge, 341 Mich. 55, 59, 67 N.W.2d 471 (1954). This general rule, however, has not been extended to permit an attorney to compromise a client's claim absent specific authority from the client to do so. In Henderson v. Great Atlantic & Pacific Tea Co., 374 Mich. 142, 147, 132 N.W.2d 75 (1965), the Michigan Supreme Court stated the rule as follows:
 
 
 45
 "The principle which governs this case is set forth in 66 A.L.R. 107 et seq., as supplemented in 30 A.L.R.2d 944 et seq., as follows:
 
 
 46
 " 'The almost unanimous rule, laid down by the courts of the United States, both Federal and State, is that an attorney at law has no power, by virtue of his general retainer, to compromise his client's cause of action; but that precedent special authority or subsequent ratification is necessary to make such a compromise valid and binding on the client.' (Citing numerous cases)
 
 
 47
 " 'The above rule has been adhered to in Michigan in Eaton v. Knowles, 61 Mich. 625 [28 N.W. 740 (1886) ]; Fetz v. Leyendecker, 157 Mich. 355 [122 N.W. 100 (1909) ]; People State Bank v. Block, 2w49 Mich. 99 [227 N.W. 778 (1929) ]; and most recently in Wells v. United Savings Bank of Tecumseh, 286 Mich. 619 [282 N.W. 844 (1938) ]." (Footnote deleted.)
 
 
 48
 306 N.W.2d at 518.
 
 
 49
 We believed the "presumed" authority of the attorney discussed in Presnell is akin to the "apparent authority" considered in Capital Dredge, and such presumed authority was held to be insufficient to empower the attorney, without specific authority, to compromise or settle his client's claim.
 
 
 50
 Under all the circumstances, we hold Capital Dredge[4] is not controlling under the circumstances here.
 
 
 51
 We conclude that whether plaintiffs authorized Mr. Rusing to settle their claim is a genuine issue of material fact. Because the district court relied on M.C.R. 2.507(H), it never properly considered whether plaintiffs gave this authority or ratified their attorney's conduct. Plaintiffs did present evidence of a disputed material fact with testimony that neither accepted any offers to settle the controversy. They claimed to have informed Mr. Rusing that they would not accept the sums offered.
 
 
 52
 We, therefore, REVERSE the district court's summary judgment granted to defendants for the reasons stated. Upon REMAND, the district court should grant Florence Cement's motion to amend its answer to conform to the evidence.
 
 
 
 [1]
 The suits against these defendants were dismissed following a settlement; neither General Motors nor Detroit Edison are before us on this appeal
 
 
 [2]
 Because Frank and Sharon McKelvie are the only plaintiffs named in the federal court complaint, as well as the notice of appeal, they are the only parties properly before this court
 
 
 [3]
 The district court concluded that dismissal without prejudice leaves the issue open to further litigation
 
 
 [4]
 Terrain Enterprises v. Western Cas. & Sur. Co., 744 F.2d 1320 (5th Cir.1985), relied upon by Capital Dredge, involved a challenged settlement but the party controverting its attorney's authority "did not offer any proof that Mackbee [its attorney] did not have authority to act on their behalf." Id. at 1322. This factual situation is obviously different from the instant controversy and constitutes no authority to sustain the settlement at issue here