FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN v BUCKALLEW

Docket No. 243673. Submitted April 15, 2004, at Grand Rapids. Decided
May 25, 2004, at 9:00 A.M. Leave to appeal sought.

Farm Bureau Mutual Insurance Company brought an action in the
Kalamazoo Circuit Court against Michele D. Buckallew, personal
representative of the estates of Thomas A. and Charlotte A. Brou-
wer, deceased, seeking rescission or reformation of an agreement to
settle for $300,000 a wrongful death action brought by Buckallew
against the plaintiff's insured. A claims representative for the
plaintiff had agreed with the defendant's attorney to settle the
wrongful death action for $300,000 because the claims representa-
tive and the attorney believed that the policy, which had bodily
injury limits of $100,000 per person and $300,000 per occurrence,
provided for $300,000 of coverage for the single occurrence in which
the decedents were killed. The court, Richard Ryan Lamb, J., denied
the plaintiff's motion for summary disposition, ruling that the
$300,000 per occurrence limit applies. The Court of Appeals, SAAD,
P.J., and FITZGERALD and O'CONNELL, JJ., reversed and remanded,
holding that the policy language unambiguously limits recovery to
$100,000 for each decedent. The Court of Appeals, however, did not
address the question whether the plaintiff may rescind or reform
the settlement agreement on the basis of misinterpretation of the
insurance policy. 246 Mich App 607 (2001). On remand, the parties
moved for summary disposition and the trial court granted sum-
mary disposition for the defendant, ruling in part that a mutual
mistake had occurred about the extent of insurance coverage, but
that the plaintiff bore the risk of the mistake. The plaintiff ap-
pealed.

The Court of Appeals *held*:

The trial court correctly applied the Second Restatement of
Contracts by ruling that the plaintiff bore the risk of the mutual
mistake that occurred.

Under the Restatement, where a mistake of both parties at
the time a contract was made as to a basic assumption on which
the contract was made has a material effect on the agreed

exchange of performance, the contract is voidable by the adversely affected party unless he bears the risk of the mistake. Restatement Contracts, 2d, § 152(1). A party bears the risk of a mistake when the risk is allocated to him by agreement of the parties, or he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or the risk is allocated to him by the court on the ground that is reasonable in the circumstances to do so. Restatement Contracts, 2d, § 154.

In this case, the trial court did not err in concluding that the plaintiff bore the risk of the mistake under the second and third situations of risk bearing described in the Restatement.

Affirmed.

*Jonathan Shove Damon* for the plaintiff.

*Mequio & Peterson, P.L.C.* (by *Gary R. Peterson*), for the defendant.

Before: WHITE, P.J., and MARKEY and OWENS, JJ.

MARKEY, J. Plaintiff, Farm Bureau Mutual Insurance Company, appeals by right the trial court's order denying its motion for summary disposition and instead granting summary disposition to defendant, Michele D. Buckallew, personal representative of the estates of Thomas A. Brouwer and Charlotte A. Brouwer. This case involves two contracts: (1) an automobile liability insurance policy with limits of liability for bodily injury of $100,000 per person, $300,000 per occurrence, and (2) an agreement to settle a lawsuit for the wrongful death of two people. The trial court ruled that plaintiff was not entitled to rescind or reform its agreement to settle defendant's wrongful death lawsuit against plaintiff's insured for $300,000 even though, when the agreement was entered, it was erroneously believed that plaintiff's insurance policy provided liability coverage for that amount. We affirm.

I. SUMMARY OF MATERIAL FACTS AND PROCEEDINGS

Some of the underlying facts leading plaintiff to file this action to rescind or reform the settlement agreement are set forth in *Farm Bureau Mut Ins Co v Buckallew*, 246 Mich App 607; 633 NW2d 473 (2001). The trial court initially granted defendant summary disposition on the basis of its interpretation of the insurance contract that "Buckallew is entitled to the 'per occurrence' limit of $300,000." *Id*. at 610. But this Court held that the trial court erred in its interpretation of plaintiff's insurance policy because "the policy language unambiguously limits recovery to $100,000 for each decedent and that, therefore, the trial court erred in failing to grant partial summary disposition to Farm Bureau with regard to this issue." *Id*. at 620. In remanding this case to the trial court, this Court left unresolved whether plaintiff might be entitled to reform or rescind the settlement agreement, opining:

> We do not address the ultimate question whether Farm Bureau may rescind or reform the settlement agreement on the basis of misinterpretation of the insurance policy. The issues on appeal are limited to the trial court's rulings regarding the interpretation of the policy and the applicable policy limit. [*Id*. at 609-610 n 2.]

\* \* \*

> As stated in n 2, *supra*, because the issue before this Court concerns the trial court's denial of defendant's motion for partial summary disposition based on its interpretation of the policy, we do not address the issue whether and on what specific grounds Farm Bureau may reform or rescind a settlement contract to which it previously agreed. [*Id*. at 620 n 11.]

On remand, the trial court found that the material facts leading to the settlement agreement were undis-

puted. The Brouwers were killed when plaintiff's insured lost control of the car he was driving on an icy patch of roadway, crossed the centerline, and struck the Brouwers from behind as they walked on the shoulder of the opposite lane. Defendant filed a wrongful death action, MCL 600.2922, against plaintiff's insured in the Kalamazoo Circuit Court. Plaintiff's claims representative, Stanley L. Rakowski, commenced settlement negotiations with defendant's original attorney, John Kneas. Although aware that the bodily injury limits of the insurance policy were "$100,000 per person, $300,000 per occurrence," Rakowski believed the $300,000 limit applied in this instance because the claim involved more than one person. Likewise, although Kneas was furnished a copy of the policy, he only glanced at the declarations sheet and relied on Rakowski's representation that the policy limits were $300,000. Rakowski acknowledged that Kneas did not mislead him in any way.

During negotiations, Rakowski offered $200,000 to settle defendant's claims but Kneas demanded $300,000. Rakowski requested additional settlement authority from his supervisor, James Pell. Pell passed the file on to his supervisor, Blythe Green, Jr., with a memorandum from Rakowski stating, "My authority to settle was for $200,000. Obviously this is not going to settle this case, as the attorney demands the policy limits." Green wrote a note on the file, "Okay, let's resolve up to $300,000." In his deposition, Green testified that he asked Rakowski what the limits of the policy were and was told "$300,000." Green testified he did not review the file and assumed the policy was a single-limit $300,000 policy. Kneas and Rakowski then orally agreed to settle the wrongful death lawsuit for $300,000. Rakowski confirmed the settlement agreement in a letter to Kneas dated May 3, 1996:

> This letter will confirm that Farm Bureau Insurance Auto Insurance Carrier for Gary Majewski, hereby surrender the policy limits of $300,000 in regards to the death of Thomas and Charlotte Brouwer.
>
> Please forward copies of the probate settlement at which time I will issue our drafts.

Defendant obtained an order from the probate court approving the settlement agreement on July 3, 1996. On the same day, defendant dismissed her wrongful death action in circuit court. On July 5, 1996, defendant forwarded to plaintiff facsimiles of the probate court order approving the settlement and of the circuit court order of voluntary dismissal. Then, on July 11, 1996, counsel for plaintiff notified Kneas that it would not honor the $300,000 settlement agreement because its policy limits were only $200,000. On August 9, 1996, plaintiff filed this action to rescind or reform the settlement agreement. Without waiving any rights or defenses in the instant lawsuit, plaintiff and defendant entered a second settlement agreement that required plaintiff to "forthwith" pay defendant $200,000 and pay the remaining $100,000 "plus any additional damages, interest, costs and attorney fees, if and as ordered" by the trial court if "it is ultimately determined that the $300,000 settlement agreement is a legally binding agreement."

Plaintiff alleged four theories to rescind or reform the settlement agreement: mutual mistake, unilateral mistake, unjust enrichment, and contract (its policy limits could not be changed except by endorsement). Defendant counterclaimed, alleging breach of the settlement contract, promissory estoppel, and that the settlement agreement was binding under MCR 2.507(H). Defendant also requested specific performance of the settlement agreement.

On January 28, 2002, and March 11, 2002, the trial court conducted hearings on the parties' motions for summary disposition pursuant to MCR 2.116(C)(10). Defendant argued below, and now on appeal, that a mutual mistake regarding the limits of the insurance policy at issue did not occur because Rakowski was aware the policy provided limits of liability of $100,000 per person, $300,000 per occurrence. But Rakowski also testified he *believed*, on the facts of this case, that the $300,000 limit applied, and both Kneas and Green testified that Rakowski told them during the settlement negotiations the policy limit was $300,000. Accordingly, the trial court found that

> [t]here was, in fact, a mutual mistake. It's clear from everything that's uncontested here that both parties for a long period of time operated under the premise that this insurance policy provided $300,000 worth of coverage when, in fact, as a matter of law in doing contract interpretation it was only [$]200,000.

Although the trial court found a mutual mistake had occurred, it ruled that plaintiff was not entitled to rescind or reform the settlement agreement because Farm Bureau bore the risk of the mistake, citing Restatement Contracts, 2d, § 154(b) and (c). Subsection b provides that a party bears the risk of a mistake when it "is aware, at the time the contract is made, that [it] has only limited knowledge with respect to the facts to which the mistake relates but treats [its] limited knowledge as sufficient." The trial court reasoned:

> Farm Bureau drafted the policy; Farm Bureau reviewed the policy at three different levels—an adjuster, a senior adjuster, and a claims manager—and everyone [sic] of them looking at the policy said, yes, go ahead and pay $300,000.
>
> Who's in a better position between [Buckallew and Farm Bureau] to say, wait a minute, this is a $200,000 policy? Clearly Farm Bureau is.

\* \* \*

> So if there was limited knowledge with Farm Bureau, they treated it as sufficient. And this was not a situation where some representation [sic] of Farm Bureau exceeded his or her authority; but, rather, this went through the three levels of review I've mentioned. And in every level Farm Bureau said, yes, go ahead, pay the $300,000.
>
> And they chose to rely upon their review of the matter up to that point and to tell [Buckallew's] counsel and to allow a probate court to act upon the representation that $300,000 was available. So they bear the risk of mistake— under subsection (b) of section 154 of the restatement of contracts, the risk of mistake is with Farm Bureau.

Further, under subsection c, which states "the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so," the trial court ruled that it "allocates the risk of the mistake to Farm Bureau because they are in a superior position to know what their policy states." The trial court again found that Farm Bureau was "in a position and did, in fact, review it at three levels of review and after that went forward and told everyone, including a court, yes, [$]300,000 is available to settle."

The trial court rejected Farm Bureau's claim of unjust enrichment because there was, in fact, an undisputed, unambiguous agreement to settle the wrongful death lawsuit for $300,000. Thus, the settlement agreement was enforceable independent of Farm Bureau's contract with its insured.

The trial court also ruled that defendant should prevail on her counterclaim of promissory estoppel. The trial court noted there was a promise to pay $300,000 in exchange for Buckallew's dismissing the pending wrongful death action, the promisor should reasonably have expected the promise to induce action in reliance on it, and the promise did induce Buckallew to obtain

probate court approval of the settlement and dismiss her pending wrongful death action. The trial court concluded that the promise must be enforced to avoid injustice because the law encourages settlements. Moreover, because witnesses' memories fade with time, and reinstating the wrongful death action would revive painful memories, the presettlement status quo could not easily be restored.

In summary, the trial court denied plaintiff's request to rescind or reform the $300,000 settlement agreement because it bore the risk of the mutual mistake regarding the insurance policy limits of liability. Defendant could enforce the settlement agreement because it was a clear and unambiguous contract independent of plaintiff's contract with its insured. Alternatively, the trial court reasoned that defendant could enforce the $300,000 settlement agreement under the theory of promissory estoppel.

## II. STANDARD OF REVIEW

We stated the applicable standard of review of the trial court's decision to grant or deny a motion for summary disposition under MCR 2.116(C)(10) in *Farm Bureau, supra* at 611:

> This Court reviews a trial court's decision on a motion for summary disposition de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).[5]

---

[5] As our Supreme Court articulated in *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996):

In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. A trial court may grant a motion for

> summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4).

We review for an abuse of discretion the trial court's determination whether a mutual mistake about a fact materially affecting agreed performance justifies granting the equitable remedies of rescission or reformation of a contract. *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 26, 31; 331 NW2d 203 (1982).

### III. ANALYSIS

We hold that the trial court correctly ruled that plaintiff bore the risk of the mutual mistake in this case. Accordingly, the trial court did not abuse its discretion by declining to permit the settlement contract to be rescinded or reformed. Because defendant was entitled to judgment on both the original settlement agreement and the second settlement agreement, we need not decide whether the trial court correctly applied equitable or promissory estoppel.

Plaintiff readily acknowledges it entered into an agreement to settle the underlying wrongful death lawsuit for $300,000. Further, the settlement agreement complied with MCR 2.507(H), which provides:

> An agreement or consent between the parties or their attorneys respecting the proceedings in an action, subsequently denied by either party, is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

Here, Farm Bureau's representative confirmed the settlement agreement in writing and the probate court

also approved the settlement. The court rule is similar to a statute of frauds; compliance permits defendant to enforce the settlement agreement as a contract. See, e.g., *Columbia Assoc, LP v Dep't of Treasury*, 250 Mich App 656, 670; 649 NW2d 760 (2002), and *Michigan Mut Ins Co v Indiana Ins Co*, 247 Mich App 480, 484, 486; 637 NW2d 232 (2001).

An agreement to settle a pending lawsuit is a contract governed by the legal principles applicable to the construction and interpretation of contracts. *Eaton Co Rd Comm'rs v Schultz*, 205 Mich App 371, 379; 521 NW2d 847 (1994). See also *Michigan Mut, supra* at 484, citing *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 571; 525 NW2d 489 (1994). Generally, an unambiguous contract must be enforced according to its terms. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51-52; 664 NW2d 776 (2003). Here, the terms of the contract at issue—the settlement agreement—are clear and unambiguous: plaintiff promised to pay $300,000 to settle the wrongful death lawsuit defendant had filed. But plaintiff correctly argues that a party may obtain relief from the terms of a settlement agreement on a showing of "mistake, fraud, or unconscionable advantage taken by one party over the other." *Jackson v Wayne Circuit Judge*, 341 Mich 55, 60; 67 NW2d 471 (1954). See also *Groulx v Carlson*, 176 Mich App 484, 489; 440 NW2d 644 (1989), citing *Pedder v Kalish*, 26 Mich App 655; 182 NW2d 739 (1970). There is no evidence of fraud or unconscionable advantage here, but plaintiff argues the parties' mutual mistake—their belief that plaintiff's insurance contract afforded liability coverage of $300,000—entitles it to rescind or modify the settlement agreement. Indeed, plaintiff acknowledges that if it is not entitled to rescind or reform the $300,000 settlement agreement, it must comply with its terms.

"A contractual mistake 'is a belief that is not in accord with the facts.' " *Lenawee Co Bd of Health, supra* at 24, quoting 1 Restatement Contracts, 2d, § 151, p 383. Further, the mistaken belief must relate to a fact in existence at the time the contract is entered. *Lenawee Co Bd of Health, supra* at 24. Here, on the basis of the undisputed facts, the trial court correctly found a mutual mistake. The parties to the settlement contract mistakenly *believed* plaintiff was contractually obligated to indemnify its insured, the tortfeasor in the underlying wrongful death action, up to $300,000 for all sums he might become legally obligated to pay as a result of bodily injury. We held in *Farm Bureau, supra* at 620, as a matter of contract interpretation, that plaintiff's contract with its insured, with limits of liability of $100,000 per person, $300,000 per occurrence, would legally obligate plaintiff on the facts of this case to indemnity its insured for only $200,000. Thus, the parties to the settlement contract were mistaken in their *belief* regarding plaintiff's maximum potential legal liability to its insured under the insurance contract. But we note the issue presented here is not whether plaintiff mistakenly paid or offered to pay more than it was legally obligated to pay under its contract with its insured. Defendant is neither a party nor a third-party beneficiary[1] of plaintiff's contract with its insured. The contract at issue here is the contract to settle the wrongful death lawsuit for a payment of $300,000. Moreover, the amount of insurance available is only one of the factors plaintiff considered when deciding to settle. Plaintiff obviously concluded also that its insured was liable and that damages were

---

[1] Under MCL 600.1405 a person is only a third-party beneficiary of a contract when "the promisor undertakes an obligation 'directly' to or for the person." *Koenig v South Haven,* 460 Mich 667, 677; 597 NW2d 99 (1999).

considerable. Thus, at least three factors were of import to plaintiff in deciding whether to settle and how much to pay.

In *Lenawee Co Bd of Health, supra* at 24 n 9, our Supreme Court noted that "[l]egal or equitable remedial measures are not mandated in every case in which a mutual mistake has been established." Instead, whether rescission should be granted is a matter within the discretion of the trial court. *Id*. at 26. Trial courts must apply "a case-by-case analysis whereby rescission is indicated when the mistaken belief relates to a basic assumption of the parties upon which the contract is made, and which materially affects the agreed performances of the parties." *Id*. at 29. There is no doubt here that the mutual mistake related to "a basic assumption of the parties upon which the contract is made, and which materially affects the agreed performances of the parties." *Id*. But our Supreme Court adopted not only the above stated rule consistent with the Restatement Contracts, 2d, § 152, but also its exceptions set forth in Restatement Contracts, 2d, § 154. *Lenawee Co Bd of Health, supra* at 29-30 & 30 ns 11, 12. The restatement rule and its exceptions read:

§ 152 When Mistake of Both Parties Makes a Contract Voidable

(1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154. [Restatement Contracts, 2d, § 152(1), p 385.]

* * *

§ 154 When a Party Bears the Risk of a Mistake

A party bears the risk of a mistake when

(a) the risk is allocated to him by agreement of the parties, or

(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or

(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so. [Restatement Contracts, 2d, § 154, pp 402-403.]

We hold that the trial court correctly applied Restatement Contracts, 2d, § 154 by ruling that plaintiff bore the risk of the mutual mistake that occurred. It is well-settled that an insured is presumed to know the terms of his insurance policy. *Marlo Beauty Supply, Inc v Farmers Ins Group of Cos*, 227 Mich App 309, 324; 575 NW2d 324 (1998), citing *Farm Bureau Mut Ins Co v Hoag*, 136 Mich App 326, 332; 356 NW2d 630 (1984). Even more, an insurance company must be presumed to know the terms of a policy of insurance it issues and, in particular, the limits of the policy's liability coverage. In approving the settlement, Rakowski's supervisors were aware that they were relying on Rakowski's understanding of the policy limits, and treated knowledge of Rakowski's understanding as sufficient, rather than examining the actual policy themselves. We agree with the trial court's reasoning that Restatement Contracts, 2d, § 154(b) applies to this case, and that plaintiff bore the risk of the mistake regarding its liability policy limits. For the same reasons, the trial court did not abuse its discretion by allocating the risk of the mistake to plaintiff pursuant to Restatement Contracts, 2d, § 154(c). Accordingly, the trial court did not abuse its discretion by declining to permit plaintiff to rescind or reform the $300,000 settlement contract. In sum, the trial court did not err by granting summary disposition to defendant because she was entitled to judgment on both the origi-

nal settlement agreement and the second settlement agreement. Plaintiff's arguments to the contrary are misplaced.

First, plaintiff relies on the Michigan common-law rule that a "payment made under a mistake of fact can be recovered even if the mistake could have been avoided by the payor." *Wilson v Newman*, 463 Mich 435, 439; 617 NW2d 318 (2000), citing *Couper v Metropolitan Life Ins Co*, 250 Mich 540, 544; 230 NW 929 (1930), and *Madden v Employers Ins of Wausau*, 168 Mich App 33, 40; 424 NW2d 21 (1988). A recipient of payments made by mistake is entitled to retain all or part of the funds mistakenly paid only if they "can demonstrate a change of position or detrimental reliance as a consequence of having received the mistaken payment." *Wilson, supra* at 443. But the present case is simply not one to recover contractual payments made by mistake. Rather, plaintiff seeks to avoid the consequences of a clear and unambiguous contract through rescission or reformation. Thus, *Wilson, Couper,* and *Madden* are distinguishable from the case at bar because they involved an effort to recover money paid by mistake under a contract, not an action to rescind or reform the contract. Also distinguishable from the instant case for the same reason are: *Gen Motors Corp v Enterprise Heat & Power Co*, 350 Mich 176; 86 NW2d 257 (1957) (overpayment under construction contract); *State Savings Bank of Ann Arbor v Buhl*, 129 Mich 193; 88 NW 471 (1901) (payment made under a storage contract under the mistaken belief the item stored had been lost or destroyed); *Pingree v Mutual Gas Co*, 107 Mich 156; 65 NW 6 (1895) (payment in excess of lawful rate for gas consumption); and *Walker v Conant*, 65 Mich 194, 197, 198; 31 NW 786 (1887) (purchase of a forged note and mortgage believing them valid).

Next, plaintiff argues that if the settlement agreement is not rescinded or reformed, defendant will be unjustly

enriched. "The elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by the defendant." *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993). If applicable, the law implies a contract to prevent unjust enrichment. *Id*. Plaintiff's argument has two flaws. First, "a contract will be implied only if there is no express contract covering the same subject matter." *Id*. Here, it is undisputed an express contract existed. A court may not imply a contract contrary to its clear and unambiguous terms. Second, by agreeing to settle defendant's wrongful claim for $300,000 plaintiff inherently conceded that its insured was liable and that defendant sustained at least that amount of damages. Therefore, defendant receives no more under the settlement agreement than what plaintiff agreed she justly deserves. The trial court correctly concluded that plaintiff's argument of unjust enrichment fails.

Last, plaintiff argues that to permit the settlement agreement to stand is contrary to condition fourteen of its insurance contract with its insured. That condition, in essence, prohibits waiver or modification of the terms of the policy except by endorsement. This argument fails, of course, because a modification of the insurance contract is not at issue. Rather, the separate, independent contract to settle a lawsuit that plaintiff entered into with defendant is being enforced.

Because we conclude that the trial court correctly granted judgment to defendant under the $300,000 settlement agreement, we need not address the issue of promissory estoppel.

We affirm.