GRAHAM v. SINDERMAN.

1. FRAUD—EQUITY—APPLICATION OF RULE THAT INNOCENT PARTY MAKING FRAUD POSSIBLE MUST SUFFER.

Whether the rule that, where one of two innocent persons must suffer by reason of the wrongful act of a third person, the loss must fall upon the person placing matters in the hands of the wrongdoer and making it possible for him to perpetrate a fraud with every semblance of verity, is applicable to a given case depends upon the relation and dealings between the two innocent persons and the wrongdoer.

2. ALTERATION OF INSTRUMENTS—BILLS AND NOTES—MORTGAGES—FORGERY — INNOCENT PARTY NOT RESPONSIBLE FOR FORGERY WHERE INSTRUMENTS FULLY EXECUTED.

Where a borrower and a money lender employed the same broker, who forged a note and mortgage of the borrower and thereby defrauded the lender, the former is not responsible on the theory that he made the fraud possible, in view of the fact that the instruments placed with the broker were fully executed, and the forgery was accomplished by changing the date and amount and by substituting the name of another mortgagee, which changes were apparent to casual inspection, and were sufficiently suspicious to put an ordinarily prudent person upon inquiry.

3. SAME—BROKER HAS NO IMPLIED AUTHORITY TO ALTER FULLY EXECUTED NOTE AND MORTGAGE.

There can be no application of the doctrine of implied authority in a broker to perfect a mortgage, thereby rendering the same available for negotiation, by altering the date, amount, and name of mortgagee, where the instrument was complete in all its parts when placed with him for delivery to the mortgagee.

4. SAME—MORTGAGES—ALTERED MORTGAGE CONVEYS NO RIGHTS.

The unauthorized substitution of a mortgagee in a mortgage is such a material alteration as will avoid the mort-

[1]Estoppel, 21 C. J. § 176; [2]Cancellation of Instruments, 9 C. J. § 65 (Anno); Estoppel, 21 C. J. § 176; [3]Alteration of Instruments, 2 C. J. § 107; [4]Id., 2 C. J. §§ 5, 10, 75; 22 A. L. R. 1142; 1 R. C. L. 1037; 5 R. C. L. 58; 6 R. C. L. 54.

gage, so that it conveys no rights to the mortgagee whose name has been inserted.

5. SAME—INNOCENT PURCHASERS UNDER FORGED DEEDS—NOTICE.
    Innocent purchasers under forged deeds are in no better position as to title than if they had purchased with notice.

6. SAME—BILLS AND NOTES—BROKER HAS NO IMPLIED AUTHORITY TO ALTER.
    A broker with whom the maker left a fully executed note for delivery on the completion of negotiations for a loan from a named payee had no implied authority to alter the note by changing the date, amount, and name of payee.

7. ESTOPPEL — CANCELLATION OF FORGED NOTE AND MORTGAGE — NEGLIGENCE.
    Where a borrower fully executed a note and mortgage and left them with a broker to deliver on completion of negotiations for a loan from the mortgagee named therein, and the broker altered the instruments by changing the date, amount, and name of mortgagee, and delivered to an innocent purchaser, there was no negligence operating to estop the borrower from maintaining a suit for cancellation on the ground of forgery.

8. PRINCIPAL AND AGENT—BROKERS—HOLDING OUT AS AGENT IN WHOM CONFIDENCE MIGHT BE PLACED.
    A borrower, by fully executing a note and mortgage and leaving them with a broker for delivery to the person named therein, on completion of negotiations for a loan, did not thereby hold out the broker as his agent in whom confidence might be placed.

9. MORTGAGES—REFUSAL TO DISCHARGE—PENALTY—STATUTES.
    An innocent purchaser of a forged mortgage may not be required to pay the penalty fixed by 3 Comp. Laws 1915, § 11745, for refusing to discharge the mortgage, since the statute relates to mortgages satisfied by payment or full performance of the conditions thereof.

Appeal from Kent; Dunham (Major L.), J.    Submitted January 20, 1927.    (Docket No. 144.)    Decided April 1, 1927.

[5]Alteration of Instruments, 2 C. J. § 5; [6]Brokers, 9 C. J. § 24; [7]Estoppel, 21 C. J. § 176; [8]Brokers, 9 C. J. §§ 13, 24 (Anno); [9]Mortgages, 41 C. J. § 979 (Anno).

Bill by Ernest Graham and another against Edward Sinderman to set aside a forged note and mortgage. From a decree dismissing the bill, plaintiffs appeal. Reversed, and decree entered for plaintiffs.

*Dorr Kuizema,* for plaintiffs.

*Steketee & Steketee,* for defendant.

WIEST, J.    This is a bill to discharge a forged note and real estate mortgage.    Plaintiff Ernest Graham bought lots and erected dwellings thereon.    To finance his building operations it was his practice to mortgage lots and receive the money thereon in installments through a loan broker as the work on the building progressed.    Mrs. Annie Nippress conducted a loan broker's office in the city of Grand Rapids, and Mr. Graham procured several loans through her efforts. His practice was to inform the broker of the sum wanted for a particular building, and, when she had arranged for the loan, Mr. Graham and his wife executed a note and mortgage to the person the broker stated was making the loan and delivered the same to the broker, who procured the money and paid it to Mr. Graham, as work on the building progressed.

In October, 1925, Mr. Graham purchased two lots, upon which he intended to erect dwellings, and took up with Mrs. Nippress the subject of finances.    She informed him she had $6,700 to place.    Plaintiffs concluded to take $3,500 on one lot and executed a mortgage thereon to one Andersch and Mrs. Nippress was to pay the loan in installments, as before mentioned. Installments amounting to about $800 were received by Mr. Graham before the trouble here involved arose. A few days after giving the Andersch mortgage Mr. Graham decided to borrow the rest of the $6,700 on the other lot and so informed Mrs. Nippress, who prepared a note and mortgage to Johanna Kalkbrenner for $3,200, and plaintiffs, on October 15, 1925, executed

and left the same with Mrs. Nippress to obtain the money and pay the same to them in installments. Mrs. Nippress visited defendant, for whom she had loaned money on mortgages, and found he had $700 in money and shares of stock in a corporation worth $1,100, and represented that she could loan $1,800 for him, to be secured by mortgage. Defendant gave her the money and stock and Mrs. Nippress altered the note and mortgage, given by plaintiffs to Johanna Kalkbrenner, by changing the dates from October 15, 1925, to November 16, 1925, the amount payable from $3,200 to $1,800, and the name of the payee on the note and the mortgagee from Johanna Kalkbrenner to Edward Sinderman, delivered the forged note to defendant, recorded the forged mortgage and caused it then to be sent to defendant, pocketed the $1,800 and has paid nothing to plaintiffs. Late in November, 1925, plaintiffs learned of the forgeries and demanded a discharge of the mortgage and surrender of the note, and, upon defendant's refusal, filed the bill herein. Plaintiffs appealed from a decree dismissing their bill.

Plaintiffs were innocent. Mrs. Nippress perpetrated the wrong by means of forgery. Defendant was innocent. Where shall the loss fall? The circuit judge solved the problem in accord with the principle that where one of two innocent persons must suffer by reason of the wrongful act of a third person, the loss must fall upon the person placing matters in the hands of the wrongdoer and making it possible for such person to perpetrate a fraud with every semblance of verity. Whether the rule applied by the circuit judge is decisive depends upon the relation and dealings between plaintiffs and Mrs. Nippress and also between defendant and Mrs. Nippress. Plaintiffs employed Mrs. Nippress's services as a loan broker to aid in their scheme of buying lots and mortgaging the same to raise funds for building purposes. As a loan broker Mrs. Nippress was also employed by persons

having money to loan on mortgage security, and, as such, she made several previous loans on mortgage security for defendant and collected interest thereon for him.     The record does not show whether any of defendant's mortgage loans, placed by her, were outstanding with interest payable at her office at the time she forged the note and mortgage in suit.     So, we have a case where all the innocent parties had employed the services of the loan broker, who, by her forgery of papers, left with her by plaintiff, one of her clients, cheated and defrauded defendant, another of her clients, or at least formerly such, out of his money.

While we do not have the forged papers before us, the record is convincing that the erasures and rewriting in the note and mortgage evidenced radical changes, apparent to casual inspection, and were sufficiently suspicious to put an ordinarily prudent person upon inquiry.     The note and mortgage, delivered by plaintiffs to Mrs. Nippress, were complete in all their parts.     Mrs. Nippress was not intrusted with papers bearing *indicia* of ownership by her but with papers expressly negativing the possibility of enabling her to appear to others as owner or possessed of power calculated to invite the confidence of others.     Plaintiffs never executed the note and mortgage defendant purchased from Mrs. Nippress.     To hold the note and mortgage good would make it extremely hazardous for one to leave fully executed papers with another.     The executed instruments were left with the broker to be delivered to the mortgagee named therein.     The broker, as plaintiffs' agent, was authorized to deliver the instruments to Johanna Kalkbrenner, but was without authority to make any alterations.     *Estep* v. *Owens,* 209 Ky. 603 (273 S. W. 455).     The instruments, being complete in all their parts, bar application of the doctrine of implied authority in the broker to perfect them and thereby render the same available

for negotiation.    The mortgage could no more be altered by substitution of a different mortgagee than could a grantée in a deed be substituted.

In *King* v. *DeTar*, 112 Neb. 535 (199 N. W. 847), it was held, quoting from the syllabus:

"The unauthorized substitution of a grantee in a deed is such a material alteration as will avoid the deed, and such deed can convey no rights to the grantee whose name has been inserted."

In that case the court cited, with approval, *Lowther Oil & Gas Co.* v. *McGuire,* 189 Ky. 681 (225 S. W. 718), and said:

"In a comparatively recent case it was held that a deed in which the name of the grantee was altered after delivery is a material alteration, and that a deed so altered is void as a forgery, and that purchasers from the grantee named after the forgery acquire no right to the property, though they were innocent of the forgery and had no notice thereof."

In *Crawford* v. *Hoeft,* 58 Mich. 1, it was held, quoting from the syllabus:

"Innocent purchasers under a forged deed are in no better position as to title than if they had purchased with notice."

So much for the mortgage.    Now as to the note. In the case at bar there was no negligence on the part of plaintiffs; the note and mortgage were complete, and the proximate cause of defendant's loss was the forgery palmed off on him by Mrs. Nippress

It is well stated in an annotation in 22 A. L. R. 1142:

"It is not the duty of the maker of commercial paper to guard not only himself, but the public, against frauds and alterations, at the expense of being compelled to perform a contract he never made, because some one altered by forgery a contract he did make;" citing, among other cases, *Holmes* v. *Trumper,* 22 Mich. 427 (7 Am. Rep. 661).

There was no implied authority to alter. There was no negligence in executing the papers operating to estop plaintiffs in case of forgery; nor was there a holding out of the loan broker as an agent of plaintiffs in whom defendant might place confidence.

Plaintiffs ask that defendant be made to pay the penalty fixed by the statute (3 Comp. Laws 1915, § 11745) for refusal to discharge the mortgage. This may not be done. That statute relates to mortgages satisfied by payment or full performance of the conditions thereof.

The decree in the circuit is reversed, and one will be entered here discharging the mortgage and canceling the note, with costs to plaintiffs.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, and MCDONALD, JJ., concurred. CLARK, J., did not sit.