HENDERSON v. GREAT ATLANTIC &
PACIFIC TEA COMPANY.

1. ATTORNEY AND CLIENT—COMPROMISE—AUTHORITY.

An attorney at law has no power, by virtue of his general retainer, to compromise his client's cause of action, it being necessary to have precedent special authority or subsequent ratification to make such a compromise valid and binding on the client.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7 Am Jur 2d, Attorneys at Law §§ 126, 127.
Authority of attorney to compromise action. 66 ALR 107, 30 ALR 2d 944.

2. COMPROMISE AND SETTLEMENT—UNAUTHORIZED ATTORNEY—FOR-
      GERY.

   Compromise of plaintiff's claim against defendant for damages
      arising from alleged trichinosis after consumption of pork
      purchased from defendant, effected by attorney other than the
      attorney with whom plaintiff had a written agreement to
      represent her *held,* not to have barred her claim against de-
      fendant, where plaintiff had not authorized the attorney who
      had effected a settlement to make the compromise, had never
      received any of the proceeds thereof, her name had been
      forged on defendant's check by the compromising attorney who
      converted the proceeds to his own use.

Appeal from Wayne; Gilmore (Horace W.), J.
Submitted November 5, 1964. (Calendar No. 64,
Docket No. 50,587.)   Decided January 4, 1965.

Declaration by Helen Henderson against Great
Atlantic & Pacific Tea Company, Inc., a foreign cor-
poration, for injuries arising from the sale of al-
legedly defective pork.   Motion to dismiss granted.
Plaintiff appeals.   Reversed and remanded.

*Gerald M. Franklin,* for plaintiff.

*Vandeveer, Haggerty, Doelle, Garzia, Tonkin, &
Kerr (Ivin E. Kerr,* of counsel), for defendant.

KELLY, J.  The main question presented in this
appeal is:

"Where a check is given for settlement of a claim
in good faith by a defendant to an attorney at law
who purports to represent a claimant, and that at-
torney wrongfully forges the client's name to said
check, and keeps the entire proceeds thereof, is a
later suit by the client against the defendant barred
because of the wrongful acts of the attorney?"

Plaintiff herein on March 25, 1961, purchased from
defendant a pork roast and by reason of consump-

tion thereof became violently ill with trichinosis. Plaintiff retained Allen Chalfin and entered into a contingent agreement with him.

There is conflict in the testimony as to whether Chalfin continued to represent plaintiff or whether Dudley Davies, another attorney, in fact assumed control of plaintiff's case. Chalfin testified before the trial court that he was responsible personally to plaintiff for the conduct of her case and that he never turned the case over to Davies; that he merely told Davies "to work the file up." Davies, in contrast, testified by sworn statement that he alone represented plaintiff and that he alone was responsible for the conduct of her case.

On May 5, 1961, Attorney Davies on the letterhead of Attorney Chalfin wrote a letter to defendant stating that plaintiff had become violently ill after eating pork roast purchased at defendant's store and, "that this office has been retained" and "this office retains an attorneys lien re: services rendered or to be rendered in this cause on any and all judgments, settlements, and/or proceeds." The letter concluded, "Very truly yours, Chalfin & Davies— By: Dudley I. Davies."

Subsequently Davies negotiated a purported settlement with defendant's insurance company and on May 11, 1962, Davies received a check in the amount of $800 from the Aetna Casualty & Surety Company, payable to the order of Helen Henderson and Dudley Davies. Davies then forged plaintiff's name on the check, indorsed his own name, negotiated it, and converted the proceeds to his own use.

Chalfin testified that he was unaware of the settlement negotiated by Davies until the insurance adjuster, one Ryan, called his office concerning the releases which Davies had failed to forward to Ryan. After an investigation, Chalfin discovered Davies' machinations and reported them to plaintiff, whereupon she retained Gerald Franklin to represent her.

Thereafter, in October, 1962, plaintiff filed a declaration against defendant seeking damages. De-

fendant made a motion to dismiss on the ground that an accord and satisfaction and/or estoppel existed as to any claims plaintiff had against defendant by reason of the settlement entered into between defendant and Davies.

After the taking of testimony and due consideration, the court granted defendant's motion to dismiss and in its opinion stated:

"The general proposition of law . * * * is that when two innocent people are involved and one must suffer, neither one of them being a wrongdoer, the one who puts the proceedings into effect must suffer. Unfortunately, that is all the law can do. The law can't do anything more." (Citing *Rossman* v. *Hutchinson,* 289 Mich 577, and *Samuels* v. *Detroit Trust Co.,* 223 Mich 661.)

.  Plaintiff now appeals from the order granting the motion to dismiss, contending that Davies had no authority to settle plaintiff's , claim without 'her knowledge and consent; that she has in no way ratified or accepted such purported settlement and, consequently, Davies' acceptance of the check and negotiation thereof should in no way be considered a bar to the maintenance of plaintiff's cause of action against defendant.

The trial court's reliance on *Rossman* v. *Hutchinson* and *Samuels* v. *Detroit Trust Co., supra,* in granting defendant's motion to dismiss was misplaced.

·   In *Rossman,* a Mrs. Kerschner, in order to assist her niece and nephew-in-law, Mr. and Mrs. Hutchinson, lent securities to the Hutchinsons so that they could hypothecate them to a bank as additional security for loans made to the Hutchinsons thereby enabling the bank to escape criticism by national bank examiners for carrying the Hutchinson loans with insufficient collateral. This Court ruled that

(pp 592, 593) "creditors of the bank had a right to rely upon the authenticity, correctness and integrity of the transaction, and plaintiff, as receiver, has a right to have recourse against such securities for the protection of the creditors of the bank whom he represents in the liquidation of the assets of the bank. * .* * One who lends securities to mislead the bank examiner and the public as to the condition of a bank is in no position to reclaim such securities as against those who relied, and had a right to rely, upon the apparent fact they belonged to the borrower."

In *Samuels,* Samuels and wife conveyed realty by warranty deed, without any exceptions or reservations to one Reeber, who, with his wife, subsequently mortgaged said realty to one Anspach. After Reeber's death, Samuels filed suit to have his warranty deed to Reeber declared a mortgage, for an accounting, and a decree directing the Detroit Trust Company, administrator of Reeber's estate, to deliver to Samuels a deed to the property.

This Court found that Reeber's creditors and the administrator representing them were innocent parties and that "by giving this warranty deed Samuels represented and put it in Reeber's power to represent to his creditors that he was absolute owner of this property."[1]

That neither of these cases is authority for applying the rule in this case that "where one of two innocent parties must suffer by the wrong of a third, it should be that one which has put it in the power of the third to work the injury"[1] is evident from a comparison of the circumstances existing in this case with those existing in *Rossman* and *Samuels.*

In both *Rossman* and *Samuels,* the supposedly innocent party whose actions permitted another

---

[1] 223 Mich 661, 665.—REPORTER.

party to "work the injury," directly and with knowledge, personally took a course of action which led directly to and made possible, reliance by other innocent parties. Mrs. Kerschner personally and knowingly permitted the hypothecation of her securities and, likewise, Samuels personally and knowingly conveyed by warranty deed, whereas plaintiff in this case merely employed an attorney whose associate thereafter engaged in a fraudulent compromise unbeknown to plaintiff and for which plaintiff can in no way be held responsible.

Likewise, the other cases[2] cited by appellee in its brief do not support a finding in its favor.

The principle which governs this case is set forth in 66 ALR 107 *et seq.*, as supplemented in 30 ALR 2d 944 *et seq.*, as follows:

"The almost unanimous rule, laid down by the courts of the United States, both Federal and State, is that an attorney at law has no power, by virtue of his general retainer, to compromise his client's cause of action; but that precedent special authority or subsequent ratification is necessary to make such a compromise valid and binding on the client." (Citing numerous cases.)[3]

The above rule has been adhered to in Michigan in *Eaton* v. *Knowles,* 61 Mich 625; *Fetz* v. *Leyendecker,* 157 Mich 355; *Peoples State Bank* v. *Bloch,* 249 Mich 99; and most recently in *Wells* v. *United Savings Bank of Tecumseh,* 286 Mich 619.

Since there is nothing in the record to indicate that Davies had authority from plaintiff to compromise her claim against defendant, or that plaintiff subsequently acquiesced in or ratified the settlement

---

[2] *Graham* v. *Sinderman,* 238 Mich 210 (51 ALR 1225); *Stebbins* v. *Walker,* 46 Mich 5; *Etherington* v. *Bailiff,* 334 Mich 543.

[3] See, also, 5 Am Jur, Attorneys at Law, §§ 98, 99, pp 318–320; 7 Am Jur 2d, Attorneys at Law, § 124 *et seq.*, pp 125–129; 7 CJS, Attorney and Client, § 105; and 3 MLP, Attorneys and Counselors, § 26, pp 251–253.

agreed to between Davies and defendant, the order granting the motion to dismiss is set aside and the request for relief will be granted, namely: "Appellant be allowed to proceed with her claim in the circuit court for the county of Wayne."

Reversed and remanded. Costs to appellant.

KAVANAGH, C. J., and DETHMERS, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred with KELLY, J.

BLACK, J., concurred in result.