DOXTATOR-NASH CIVIC ASSOCIATION *v.* CHERRY
HILL PROFESSIONAL BUILDING, INC.

1. PROPERTY—BUILDING RESTRICTIONS.
  Plaintiff may not obtain mandatory injunction to require re-
  moval of parking lot on theory of violation of express building
  restrictions in subdivision where record showed that restrictions
  which were applicable to great portion of subdivision were
  never imposed upon lots in question by anyone who had any
  right or title to the property or any legal position to impose
  such restrictions on the property.

2. SAME—RECIPROCAL NEGATIVE EASEMENTS—COMMON GRANTOR.
  Reciprocal negative easements must originate from a common
  grantor and arise out of a benefit accorded land retained, by
  restrictions placed upon neighboring land sold by the common
  owner; no such restrictions on the user of property may result
  from the covenant of strangers to the title of such property.

3. SAME—RECIPROCAL NEGATIVE EASEMENTS—GENERAL PLAN.
  Reciprocal negative easements by nature cannot be retroactive;
  thus plaintiff failed to establish the existence of reciprocal neg-
  ative easements on lots owned by defendant where record
  showed that general plan of restriction was entered into by
  subsequent grantees of lots in subdivision and not by common
  grantor of all lots, since strangers to defendant's title cannot
  by agreement upon a plan of restriction bind defendant or its
  predecessor in title.

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur 2d, Covenants, Conditions, and Restrictions § 168
  *et seq.*
[2, 3] 20 Am Jur 2d, Covenants, Conditions, and Restrictions § 173
  *et seq.*
[4] 16 Am Jur 2d, Constitutional Law § 570; 41 Am Jur, Pleading
  §§ 335, 340.
[5] 20 Am Jur 2d, Courts § 82 *et seq.*
[6] 41 Am Jur, Pleading § 340 *et seq.*

4. TRIAL—SUMMARY JUDGMENT—DUE PROCESS OF LAW.

Due process of law does not require a full trial where the pleadings fail to raise a genuine issue as to any material fact in a case, and where one party is entitled to judgment as a matter of law (GCR 1963, 117.2[3]).

5. SAME—COURT RULES—SUPREME COURT.

The Supreme Court of Michigan derives its authority to promulgate rules concerning the practice and procedure in all courts of the State directly from the State Constitution (Const 1963, art 6, § 5).

6. PLEADING—MOTION—SUMMARY JUDGMENT—FORM.

A motion for summary judgment is not fatally defective if it contains no prayer for relief, because the motion, in essence, is a prayer for the relief of summary judgment (GCR 1963, 117).

Appeal from Wayne, Gilmore (Horace W.), J. Submitted Division 1 April 5, 1967, at Detroit. (Docket No. 2,514.) Decided July 25, 1968.

Complaint by Doxtator-Nash Civic Association, a voluntary unincorporated association, against Cherry Hill Professional Building, Inc., a Michigan corporation, for a mandatory injunction compelling removal by defendant of a parking lot on land alleged to be subject to restrictions. Summary judgment for defendant. Plaintiff appeals. Affirmed.

*McWilliams & McWilliams,* for plaintiff.

*Frederick J. Keppen,* for defendant.

VANDER WAL, J. Defendants built a parking lot on lots 136, 137, 138 and 139 of Doxtator & Nash Fort Dearborn Subdivision. Plaintiffs claim that these lots are burdened with certain building restrictions limiting the use of the property exclusively to residential use. The trial court granted

defendants' motion for summary judgment on the ground that no issue of material fact was raised by the complaint since the property in question was not subject to the restrictions alleged by the plaintiffs.

On appeal plaintiffs ask this Court to set aside the trial court's order of summary judgment and enter an order of summary judgment in their favor. In the alternative, appellants seek reversal and an order granting a trial on the merits. Appellants further request either a mandatory injunction to remove the parking lot or a temporary injunction *pendente lite*.

The issues raised by this appeal can be stated as follows:

1. Were there any restrictions ever imposed upon these lots by a person, by anyone, who had title to the lots or who otherwise properly could do so?

2. If there were none put on, is there anything to indicate that there should be a reciprocal negative easement arising applicable to these lots because of restrictions that are on other lots in the subdivision?

3. Did the summary judgment against plaintiffs deprive them of their constitutional right to due process of law requiring a fair trial?

In 1919 the plat of this subdivision was recorded by the Kornofskys as owners of the entire subdivision. No building restrictions were recorded with the plat at that time or subsequently as a supplement to the plat. On August 12, 1921, the Kornofskys granted a portion of the subdivision to John A. Campbell, expressly excepting, among others, lots 136 to 139.

A careful search of the record discloses no restrictions imposed on lots 136 to 139 prior to this deed to Campbell. A warranty deed for lots 8, 55, 56, 123, 124, and 125 from the Kornofskys to A. K.

Nash "free from all incumbrances whatever" was recorded on March 17, 1921. Lots 134 to 139 and 153 to 158 were granted by the Kornofskys to Anna Raffel by warranty deed "free from all encumbrances whatever" on August 16, 1921. On the record presented to this Court, these are the only deeds granted by the Kornofskys, who were the only common owners of the entire subdivision.

None of these 3 deeds creates or subjects lots 136 to 139 to the building restrictions for which plaintiff contends. A deed from the Nashes, Fullers, and Whites to the Doxtators dated April 14, 1920, reciting the restrictions upon which plaintiff relies expressly *excludes* lots 1 to 139. In any event, the evidence shows that neither the grantors nor the grantees of this deed had any proprietary interest whatever in lots 136 to 139.

These records indicate clearly that the restrictions that are applicable to a great portion of this subdivision never were placed upon lots 136, 137, 138, and 139 by anyone who had any right to the property, or any title to the property, or any legal position on which to place them on the property.

It is clear here that there is nothing in this record, there is nothing in the affidavits, there is nothing anywhere in the file, and there is nothing before the Court that would indicate that at any time any restrictions were placed on these lots, or that would indicate at any time that the restrictions that are generally applicable to a good portion of the Doxtator & Nash Fort Dearborn Subdivision were ever placed on lots 136, 137, 138, and 139.

The next question which arises if there were no restrictions placed upon these lots, is whether there is anything to indicate that any restrictions were established under the theory of reciprocal negative easements?

The cases are uniform that reciprocal negative easements must originate from a common grantor. *Sanborn* v. *McLean* (1925), 233 Mich 227 (60 ALR 1212); *Cook* v. *Bandeen* (1959), 356 Mich 328. Even more fundamental is the proposition that no property may be restricted in its use solely by the covenant of strangers to the title of such property. The appellants' complaint as amended and supported by affidavit failed to state any facts to give color to their contention that lots 136 to 139 were burdened with building restrictions by virtue of reciprocal negative easements.

Defendants' chain of title is free from any mutual covenants imposing building restrictions between defendants or their predecessors in title and any property owners in the subdivision. The fact that other lot owners in the subdivision who were strangers to the title to defendants' property may have agreed on a plan of restrictions governing their property could not result in restrictions binding upon defendants or their predecessors in title. *Golf View Improvement Association* v. *Uznis* (1955), 342 Mich 128; *Sanborn* v. *McLean* (1925), 233 Mich 227 (60 ALR 1212).

*Sanborn* says, p 230:

"It must start with a common owner. Reciprocal negative easements are never retroactive; the very nature of their origin forbids. They arise, if at all, out of a benefit accorded land retained, by restrictions upon neghboring land sold by a common owner. Such a scheme of restrictions must start with a common owner; it cannot arise and fasten upon one lot by reason of other lot owners conforming to a general plan."

Also, in the case of *Buckley* v. *Archbishop of Detroit* (1954), 339 Mich 398, the Court stated (p 420):

" 'Where there is no express restriction in the chain of title of the particular lot the use of which is sought to be restricted, there must be proof of a "scheme of restrictions" originating from a common owner. *Williams* v. *Lawson,* 188 Mich 88; *McQuade* v. *Wilcox,* 215 Mich 302 (16 ALR 997); *Kiskadden* v. *Berman,* 244 Mich 473; *Nerrerter* v. *Little,* 258 Mich 462; *Taylor* v. *State Highway Commissioner* (238 Mich 215) * * * The scheme must have its origin in a common grantor; "it cannot arise and fasten upon one lot by reason of other lot owners conforming to a general plan" (*Sanborn* v. *McLean,* 233 Mich 227 [60 ALR 1212]).' "

See, also, *Saari* v. *Silvers* (1948), 319 Mich 591, 595.

The trial judge in his opinion clearly said and we adopt his language in this opinion as follows:

"Now, in this case, after much discussion and analysis of the situation and of the file, after long argument, it has been clearly established that no restrictions were placed upon this land by a common owner, the Kornofskys being the common owner of this entire property. At the time of their deeds, there were no restrictions. The restrictions were placed upon the land by persons who bought from the Kornofskys.

"Now, in view of the fact the restrictions were not placed upon the land by a common owner, but by one group of owners, who subsequently deeded to most of the plaintiffs in this case, but did not enter the chain of title as to the defendants, no negative reciprocal easements can be placed because the fundamental principle is that they can not be retroactive; that they must be placed upon the land by the original common owner. And, in this instance, the original common owner who originally deeded this property did not place any restrictions upon the property. The restrictions were placed upon the property after the original deeding, and therefore they cannot go back and be retroactive

to reach property—cannot go back and be retroactive and reach the defendants' four lots in this case.

"The doctrine of negative reciprocal easements must fall because of a lack of a common owner as required by the law, and by all cases."

Therefore, because the record is clear and there was no factual question involved in the case, the trial court was correct in granting defendants' motion for a summary judgment.

A third issue was raised by the plaintiffs in their brief as to whether they were deprived of their constitutional right to due process of law guaranteeing them a fair trial?

Due process of law has never required a full trial under the circumstances of this case. There is no genuine issue as to any material fact in this case, and therefore, defendants are entitled to judgment as a matter of law. GCR 1963, 117.2(3). Plaintiffs' suggestion that, since the Michigan Revised Judicature Act of 1961* repealed CL 1948, § 618.9 (Stat Ann § 27.989), GCR 1963, 117 cannot stand, borders on the frivolous, especially in view of the fact that appellants ask this Court to grant them a summary judgment. The Supreme Court of Michigan derives its authority to promulgate rules concerning "the practice and procedure in all courts of this state" directly from our State Constitution. Const 1963, art 6, § 5. It is difficult to consider seriously plaintiffs' argument that defendants motion for summary judgment is fatally defective because it contains no prayer for relief; the motion, itself, in its very essence consists of a prayer for the relief of summary judgment.

The judgment of the trial court is hereby affirmed, with costs to appellees.

T. G. KAVANAGH, P. J., and LEVIN, J., concurred.

---

* PA 1961, No 236.