Samuel E. RHEAULT and, Carol L. Rheault, Plaintiffs,

v.

LUFTHANSA GERMAN AIRLINES, Brigitte Wolf and Werner Kellerhals, Defendants.

No. 94–CV–73152–DT.

United States District Court, E.D. Michigan, Southern Division.

Sept. 15, 1995.

---

E. Michael Morris, Birmingham, MI, for plaintiff.

Gregory V. Murray, Detroit, MI, for defendant.

## *OPINION*

DUGGAN, District Judge.

Before this Court is plaintiffs' motion to set aside a dismissal order dated March 15, 1995, pursuant to Fed.R.Civ.P. 60(b).

### *I.  Background*

Plaintiff Samuel Rheault was employed by Lufthansa German Airlines, and was terminated according to defendants, as part of a work force reduction in 1993. On July 25, 1994, plaintiffs filed suit before this Court alleging that defendants discriminated against Samuel Rheault on the basis of his age.

Settlement discussions took place between plaintiffs' initial counsel, Richard Carolan, and defense counsel beginning sometime in early 1995. Counsel for both sides "settled" the case on March 7, 1995, for $4,675.00. On March 9, 1995, Carolan sent a letter to plaintiffs, which contained the following pertinent information:

> I was able to convince Lufthansa's lawyer to increase the settlement offer to $4,675, exceeding the figure of $4,500 on which you and I had agreed in our last telephone conversation. Basically, the increase covers this firm's expenses of litigation.
>
> Enclosed is the settlement agreement for your signatures. Please, read the agreement carefully.

(Hr'g Ex. 105).

On March 10, 1995, Carolan sent a letter to defense counsel, Gregory Murray, which enclosed the order of dismissal with prejudice (Hr'g Ex. 101). Defense counsel sent the stipulated and approved order of dismissal to

the Court for entry, which the Court signed on March 15, 1995 (Hr'g Ex. 102).

On March 17, 1995, defense counsel wrote to Carolan, and indicated that:

> Enclosed for your file please find a copy of the Order of Dismissal with Prejudice that was entered by Judge Duggan in the above-referenced matter on March 15, 1995. Please contact me when you have the executed releases from your clients and I will arrange an exchange for the settlement check.

(Hr'g Ex. 104).

Plaintiffs never signed the settlement agreement. In fact, they maintain that a settlement was never entered into because Carolan did not have the authority to settle the matter. Plaintiffs obtained new counsel, and the motion to set aside the dismissal was filed on May 12, 1995.

This Court conducted an evidentiary hearing on June 22, 1995, at which Carolan and Samuel Rheault testified. Carolan testified that prior to the "settlement" communication with defense counsel, he had received authority from his clients to settle the case for $4,500.00. He made a demand of $4,675.00, and informed defense counsel that he had authority to settle the case for that amount. Defense counsel called Carolan back and informed him that he had authority to settle the matter for $4,675.00, and both attorneys believed that the case was settled at that point. Carolan signed the order of dismissal and sent it to defense counsel on March 10, 1995. At that time, he believed the case was settled, and did not have any reason to conclude differently until sometime in April.

However, Carolan testified that he believed that defense counsel would hold the order of dismissal in trust until the settlement agreement was signed by his clients and the settlement check was received. In support of this belief, he refers to the settlement agreement language, which provides that:

> IT IS FURTHER UNDERSTOOD AND AGREED that the litigation shall be dismissed with prejudice and without costs, interest or attorneys' fees to any party and the Plaintiffs hereby authorize their attorney to execute a stipulated order to that effect in the form attached hereto marked Exhibit A.

(Hr'g Ex. 103, Settlement Agreement at 3). He also testified that another reason for his belief that the agreement would be held in trust, and not filed with the Court until it was signed and the check received, was based on his experience in practicing law.

Carolan testified that in April, 1995, he learned that his clients were not satisfied with the settlement and were looking for another attorney. On cross-examination, he testified that he never had anyone file a dismissal before the signed settlement agreements were received. He further indicated that his clients never gave him authority to sign the settlement agreement on their behalf and the payment of funds was essential to the settlement. He testified that he did not believe that filing the order of dismissal was consistent with the settlement agreement reached with defense counsel.

Samuel Rheault testified that Carolan never had authority to settle the case and that he was "not in complete favor" of the settlement. He stated that Carolan talked to him over the phone with respect to the letter of March 9, 1995, and the settlement agreement. Carolan told him that he was sending him some settlement documents. Plaintiff never agreed with the terms of the settlement. Carolan sent him a letter dated April 3, 1995, which indicated in pertinent part that "[t]o date, I have not received it [the release agreement] from you, signed, as I had requested. Please forward the document at your earliest convenience, so that we can bring this matter to a conclusion." (Hr'g Ex. 105). Rheault testified that he responded to the letter by informing Carolan that he was looking for another attorney.

## II. Discussion

Plaintiffs contend that this dispute should be resolved based upon the language of M.C.R. 2.507(H), which provides that an agreement "is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney."

Defendants, however, suggest that M.C.R. 2.507(H) is not controlling, stating that:

> ... Plaintiffs rely heavily upon Rule 2.507(H) of the Michigan Court Rules. Plaintiffs cite no authority for the applicability of M.C.R. 2.507(H) to this case, nor is Defendant aware of any such authority. To the extent that MCR 2.507(H) is deemed useful as a guideline, however, it indicates that Plaintiffs' motion should be denied.

(Defs.' Br. at 11) (footnote omitted).

■■■ M.C.R. 2.507(H) is not a rule of substantive law, but rather is one of Michigan court procedure. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Michigan Court Rules "govern practice and procedure in all courts established by the constitution of laws of the State of Michigan." M.C.R. § 1.103. Under the *Erie* doctrine, federal courts sitting in diversity apply substantive laws of the state, but not procedural laws of court. *See McKelvie v. City of Mount Clemens,* 940 F.2d 661, 1991 WL 139697 at *4 (6th Cir.1991) (Unpublished Opinion) (Attached). Accordingly, this Court finds that Rule 2.507(H) is not controlling.

Defendants contend that the settlement agreement should be enforced, and plaintiffs' motion to set aside the order of dismissal should be denied, because plaintiffs' counsel had "apparent authority" to agree to settle, and therefore his client is bound by the agreement.

Defendants frame the issue as follows:

### STATEMENT OF ISSUE PRESENTED

CAN PLAINTIFFS HAVE AN ORDER OF DISMISSAL SET ASIDE UNDER RULE 60(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE, WHERE THE ORDER WAS SIGNED BY THEIR ATTORNEY IN RATIFICATION OF A WRITTEN SETTLEMENT AGREEMENT AND RELEASE FROM LIABILITY THAT THE ATTORNEY HAD APPARENT AUTHORITY TO CONCLUDE?

(Defs.' Br. at ii).

■■■ In Michigan, the general substantive rule is that an attorney is presumed to have authority to act on his client's behalf. *Jackson v. Wayne Circuit Judge,* 341 Mich. 55, 67 N.W.2d 471 (1954). However, an attorney must have specific authority from the client to settle a case. *Henderson v. Great Atlantic & Pacific Tea Co.,* 374 Mich. 142, 132 N.W.2d 75 (1965). The *Henderson* Court noted that:

> [t]he almost unanimous rule, laid down by the courts of the United States, both Federal and State, is that any attorney at law has no power, by virtue of his general retainer, to compromise his client's cause of action; but that precedent special authority or subsequent ratification is necessary to make such a compromise valid and binding on the client.

*Id.* at 147, 132 N.W.2d 75.

Defendants rely on *Capital Dredge and Dock v. City of Detroit,* 800 F.2d 525, 531 (6th Cir.1986) and *Nelson v. Consumers Power Co.,* 198 Mich.App. 82, 83, 497 N.W.2d 205 (1993), in support of their contention that plaintiffs' attorney had "apparent authority." A careful reading of both cases leads this Court to conclude that based upon the facts of the instant case, the concept of "apparent authority" is not applicable to this case. The Court in *Capital Dredge,* articulated two important principles in deciding whether the doctrine of "apparent authority" can be the basis of an agreement to settle.

First, the Court explained that:

> an attorney does not generally have *implied* authority to compromise the client's claim. The Michigan courts have refused to find that a client implicitly authorizes his attorney to settle his claim when the client employes [sic] the attorney.

*Id.* at 532. The *Nelson* court explained that "[t]he general rule in Michigan is that an attorney has no authority by virtue of his general retainer to settle a lawsuit on behalf of his client." *Nelson,* 198 Mich.App. at 85, 497 N.W.2d 205.

Secondly, the *Capital Dredge* Court noted that:

> [a]pparent authority is the power to affect the legal relations of another person by transactions with third persons, professed-

ly as agent for the other, arising from and in accordance with the other's manifestations to such third persons. Michigan courts accept this definition of apparent authority. If a third party, based on a principal's manifestations, reasonably believes that the supposed agent is authorized to enter into a transaction or agreement, the principal will not be allowed to deny liability under the agreement even if the agent had no actual authority to act for the principal. Apparent authority is created by the principal's manifestations to the third party; the principal's communications with the supposed agent are not relevant to the question of apparent authority. *Id.* at 530 (citations omitted).

■ Apparent authority may not be established by the representations of the agent. *Michigan Nat'l Bank v. Kellam,* 107 Mich. App. 669, 670–80, 309 N.W.2d 700 (1981); *see also Richards v. General Motors Corp.,* 876 F.Supp. 1492, 1506 (E.D.Mich.1995) ("the apparent power of an agent is to be determined by the acts of the principal and not by the acts of the agent.")

■ Applying these basic principles to the instant case, this Court concludes that plaintiffs' counsel did not have "apparent authority" to settle this case. Defendants argue that they "justifiably relied upon Attorney Carolan's apparent authority when [they] accepted the proposed settlement. . . ." (Defs.' Br. at 8). Defendants, however, have pointed to no facts which "justified" their reliance, other than the simple fact that defendants were aware that Carolan had been employed by plaintiffs to prosecute the lawsuit. Since, as previously indicated, the mere fact that Carolan was retained by plaintiffs to prosecute the lawsuit, does not give him implied authority to settle, defendants must persuade this Court that there exists some manifestations to the third party (defendants), from the principal (plaintiffs). No facts supporting such manifestations have been pointed out by defendants, and this Court finds that no such manifestations exist.

This Court believes that *Capital Dredge* and *Nelson* can be distinguished from this case. As previously indicated, the court in *Capital Dredge* acknowledged the rule in Michigan that the mere retention of an attorney to represent a plaintiff in conjunction with litigation does not give that attorney the authority to settle; and that for "apparent authority" to exist, the client must have, through his or her "manifestations," conveyed to the third-party a reason to believe that the attorney had the authority to *settle* on behalf of the client. The facts in *Capital Dredge,* suggest that plaintiffs' attorney was given authority to negotiate a settlement of various claims involved; however, he "had no authority to release any of Capital Dredge's extra work claims." *Capital Dredge,* 800 F.2d at 529. The Court indicated that:

Capital Dredge has not argued that Alteri lacked authority to negotiate a settlement of any controversies arising from the explosion. To the contrary, Alteri was employed to represent Capital Dredge regarding certain claims arising from the explosion.

*Id.* at 531.

Capital Dredge, by authorizing attorney Alteri to participate in settlement negotiations, with authority to settle some of the claims "clothed him with apparent authority" to negotiate settlement of all claims. *Id.* at 530.

In this case, however, there are absolutely no facts which would suggest that the plaintiffs did anything, other than retain Carolan, that would convey to a third party that they had authorized him to accept a settlement on their behalf, and defense counsel was not justified in believing that Carolan had such authority.

To the extent that M.C.R. 2.507(H) provides "guidance," it is clear that the Michigan Supreme Court intended to avoid disputes about whether a settlement existed by requiring that the evidence of the settlement be in writing, or that the settlement be made in open court.

In *Nelson,* the trial court acknowledged that the plaintiff's attorney had communicated in writing that defendant's offer had been accepted:

The Court is satisfied that defense justifiably relied upon plaintiff attorney's tele-

phone and written communications that the offer by defense for $20,000.00 was accepted.

*Nelson,* 198 Mich.App. at 85, 497 N.W.2d 205.[1]

This Court finds that Carolan believed that his clients would agree to the settlement offer and would sign the settlement agreement submitted for their signatures.[2]

■ However, contrary to the conclusion reached by the trial court in *Nelson,* this Court does not find that Carolan had actual authority to agree to settle; nor did he ever expressly state in writing that he had such authority or that he was agreeing to settle the case for the amount defendants were willing to pay. The only writing signed on behalf of plaintiffs is the stipulation for dismissal which Carolan signed and returned to the defense attorney. This Court accepts Carolan's testimony that such stipulation was routinely sent by him and that he never expected it to be filed until he had received the signed agreement from his client and forwarded it onto defense counsel.

### III.  Conclusion

As plaintiffs have indicated, M.C.R. 2.507(H) is not controlling. In order for defendants to recover, they must establish that Carolan had "apparent authority" to settle. This Court concludes that Carolan was not clothed with "apparent authority" to settle the case and defense counsel had no basis for believing that Carolan had such authority. Plaintiffs did nothing to communicate to defense counsel that Carolan had the specific authority to settle the case, and therefore, defense counsel did not justifiably rely on any "apparent authority."

For the reasons set forth above, plaintiffs' motion to set aside the dismissal order dated March 15, 1995, is granted.

---

**1.** Judge Neff in concurrence in *Nelson,* clearly expressed the view that the case should not have been decided on the basis of "apparent authority" because based upon review of the facts, a binding agreement was reached satisfying M.C.R. 2.507(H). *Nelson,* 198 Mich.App. at 93, 497 N.W.2d 205 (Neff, J., concurring).

An Order consistent with this Opinion shall issue forthwith.

### Attachment

(Cite as:  940 F.2d 661, 1991 WL 139697 (6th Cir.(Mich.)))

NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.

(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)

Frank McKELVIE, Sharon McKelvie, Plaintiffs–Appellants, Cross–Appellees,

v.

CITY OF MOUNT CLEMENS, Defendant–Appellee,

Florence Cement Company, Defendant–Appellee, Cross–Appellant.

Nos. 90–1430, 90–1448.

United States Court of Appeals, Sixth Circuit.

July 30, 1991.

On Appeal from the United States District Court for the Eastern District of Michigan, No. 88–70446; Zatkoff, J.

E.D.Mich., 728 F.Supp. 1330.

REVERSED.

---

**2.** The Court notes that defendants did not forward to plaintiffs' counsel the settlement check either when he sent the settlement agreement to Carolan or when he received and filed the signed stipulation for dismissal. It is clear to this Court that the settlement funds would not be sent until defense counsel had the settlement agreement *signed by the plaintiffs* in his hands.

Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and WELLFORD, Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

**1 Plaintiff, Frank McKelvie, was involved in a car accident at the intersection of New Street and Pine Street in the City of Mount Clemens, Michigan, early in 1985. Plaintiff's car was struck on the right side by another vehicle and then collided with a pole, and he was seriously injured as a consequence.

McKelvie and his wife, Sharon, along with their three children, instituted a cause of action in Michigan state court against defendant, the City of Mount Clemens in March of 1986. In 1988, the same plaintiffs filed a separate suit arising out of the same accident against defendant, Florence Cement Company. Still later, McKelvie and his wife filed a cause of action in federal court against General Motors and Detroit Edison.[1] An amended complaint, however, in federal court added Mount Clemens and Florence Cement as defendants. Mount Clemens had asserted accord and satisfaction as an affirmative defense, but Florence Cement failed to raise this affirmative defense. Upon plaintiffs' motion, they were permitted to dismiss their actions in state court without prejudice.

Following this state court dismissal, Mount Clemens and Florence Cement moved for summary judgment, arguing that there was no material issue of fact as to whether an accord and satisfaction had been established, and the district court granted the motions of both defendants.

Plaintiffs made a motion for reconsideration. Along with its response to this motion for reconsideration, Florence Cement also moved to amend its answer so as to include accord and satisfaction as an affirmative defense. The district court denied plaintiffs' motion to reconsider, issuing a memorandum opinion stating its reasons for its action.

The district court, however, denied Florence Cement's motion to amend without explanation.

Plaintiffs now appeal the grant of summary judgment to both defendants.[2] Florence Cement cross-appeals the court's denial of its motion to amend its answer. We REVERSE.

On May 6, 1988, plaintiffs' attorney in the Michigan state court proceedings, sent to Mount Clemens' counsel a letter indicating that plaintiffs accepted the City's proposed $10,000 settlement offer, stating:

Dear Mr. Ryan:

My clients will accept your offer of $10,000 in settlement. I will get back to you on how the check should be drawn up.

Thank you for your cooperation.

The letter was signed by plaintiffs' then counsel, Rusing.

The City's attorney responded promptly: "This is a total and complete settlement of this matter as against my client, the City of Mount Clemens.... Your clients will indemnify and hold harmless the City of Mount Clemens."

Rusing then sent a letter to counsel for defendant, Florence Cement, including the following language, but indicating interest in such an offer, stating:

At this point, my clients are not sure about the settlement and want to give it some thought before they agree to your settlement offer of $10.000. I have indicated to them the offer, but as of this time, I would suggest that you proceed with this case as if no settlement were derived at.

**2 On May 20, 1988, however, Rusing indicated to Florence Cement that plaintiffs would settle $15,000:

Kindly be advised that I discussed this matter with my clients again and they are agreeable to accepting $15,000 in settlement from your client. In my opinion this is a small amount considering the nature of my

---

1. The suits against these defendants were dismissed following a settlement; neither General Motors nor Detroit Edison are before us on this appeal.

2. Because Frank and Sharon McKelvie are the only plaintiffs named in the federal court complaint, as well as the notice of appeal, they are the only parties properly before this court.

clients' injury, which consists of a complete quadriplegia. My clients, however, are aware of the fact that they can receive a much higher verdict, the same amount or nothing at all. They both advise me that they are agreeable to accepting the settlement in the amount of $15,000. If your company is still willing to enter into the settlement, then please let me know. If they are not, then please let me know as well and I will proceed with further discovery and trial preparations. If the case can be settled, then I would appreciate your making a check out for $100.00 payable to Barbara McKelvie, $100.00 payable to Kathleen McKelvie, $100.00 payable to Frank McKelvie, parent of Daniel McKelvie, and $14,700 payable to Frank McKelvie and Sharon McKelvie.

Thank you for your usual courtesy and cooperation.

The Mount Clemens attorney wrote another letter about a week later purporting to confirm the settlement of $10,000 but he allocated $100 of the total to each of the children, and the remaining $9,700 to Frank and Sharon McKelvie. This letter enclosed "the necessary releases."

Frank McKelvie testified that he accepted no offer to settle with either Mount Clemens or Florence Cement. Sharon McKelvie testified that she had received information concerning settlement offers, but she informed Rusing that she would not accept the sums offered.

Rusing's affidavit indicated:

[I] never, at any time, discussed, nor contemplated, nor agreed, on behalf of the plaintiffs to any indemnification of the City of Mt. Clemens nor any other party; and, further, I never discussed, contemplated, nor agreed to the release of "all other persons, firms, employers, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, cost, loss of service, expenses and compensation whatsoever."

He also indicated under oath that by way of a telephone conversation with defense counsel, he "expressly and unequivocally revoked and repudiated any and all settlement offers and proposals" before they were consummated. Plaintiffs did not produce this Rusing affidavit, however, until after the grant of summary judgment. It was submitted with plaintiffs' motion for reconsideration.

A. Florence Cement's Cross–Appeal

Plaintiffs argue that Florence Cement waived its affirmative defense of accord and satisfaction because it did not plead the defense in the first responsive pleading, and thus Florence Cement was precluded from seeking summary judgment on that basis. Florence Cement contends that the district court erred when it denied its motion to amend the answer to include accord and satisfaction as a defense.

**3 Amendment of pleadings may and should be granted to conform to the proceedings and raise issues already addressed on the merits. Fed.R.Civ.P. 15(b). When issues not raised by the pleadings are raised by express or implied consent of the parties, the issues may be treated in all respects as if they had been raised in the pleadings. Id. That same Rule provides that amendment may be sought after judgment, but failure to amend does not affect the result. We conclude that the district court should have allowed Florence Cement's amendment, although its failure to do so does not preclude the grant of summary judgment.

The issue of accord and satisfaction was litigated by plaintiffs and defendants before the district court. Plaintiffs impliedly, therefore, consented to the naming of this defense by Florence Cement. The latter's summary judgment motion was specifically based on the claim of accord and satisfaction. This issue was argued before the district court. Plaintiffs opposed the summary judgment on the merits, without ever raising an objection that this issue was not raised by the pleadings of Florence Cement. Plaintiffs therefore are precluded from claiming that we should not consider accord and satisfaction on behalf of both defendants.

B. Mount Clemens

Plaintiffs claim that the question whether there was an accord and satisfaction had

been litigated and determined by the state court, precluding the district court from deciding the issue anew. Plaintiffs moved for voluntary dismissal in state court based on plaintiffs' filing of a similar claim in federal court. Plaintiffs now argue that the state court "implicitly" decided whether there had been an accord and satisfaction by granting the motion to dismiss without prejudice. Because both defendants opposed dismissal without prejudice based upon the claim that a settlement had been reached, plaintiffs argue that the state court's court action (dismissal without prejudice) must, by reasonable inference, be based on accord and satisfaction.[3] We disagree.

The state judge did not expressly consider this issue when granting plaintiffs' motion. Indeed the state court judge stated that it should be left to the federal court to decide. Since the state court explicitly declined to rule on this issue, the district court properly considered the issue.

2. Settlement in Michigan without express authority or ratification

Whether an attorney can settle a case without his or her client's express authority is the crux of this case. The district court relied on M.C.R. s 2.507(H) in concluding that the attorney has the right to make a binding settlement. Because the court was convinced that a material issue of fact concerning the attorney's intention to enter the settlement did not exist, it granted summary judgment in favor of defendants. On the other hand, however, if a client must expressly authorize his or her attorney to enter into such an agreement, the giving of such authorization is a genuine issue of material fact and summary judgment was improper.

**4 Michigan Court Rules s 2.507(H) provides:

An agreement or consent between the parties or their attorneys respecting the proceedings in an action, subsequently denied by either party, is not binding unless it was made in open Court, or unless evidence of

the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

M.C.R. s 2507(H) is a Michigan court rule. We are satisfied that the district court erred in relying on a rule of Michigan court procedure. See *Energy Acquisition Corp. v. Harbor Ins. Co.*, No. 68910341 CA, slip op. at 8 (W.D.Mich. Sept. 4, 1990) (district court expressing doubts as to whether s 2.507(H) applies to a federal diversity action).

Michigan Court Rule s 2.507(H) is not a rule of substantive law. The court rule in question does "govern practice and procedure in all courts established by the constitution and laws of the State of Michigan." M.C.R. s 1.103 (emphasis added). Under the Erie doctrine, federal courts sitting on diversity apply substantive laws of the state, not procedural laws of court.

Defendants assert that because the purported agreement occurred during the course of proceedings in a Michigan court, the district court was obligated to "consider the effect of the governing Michigan rules of practice and procedure upon the substantive principle of Michigan law to be applied." We do not agree. To accept this argument would, in effect, create a rule that when a case is dismissed in state court and later filed in federal court, the federal court is obligated to consider the effect of Michigan procedural rules, such as time requirements or method of service, on substantive principles of the state law.

In Michigan, the general substantive rule is that an attorney is presumed to have authority to act on his client's behalf. *Jackson v. Wayne Circuit Judge*, 341 Mich. 55, 67 N.W.2d 471 (1954). An attorney must have specific authority from the client, however, to settle a case. *Henderson v. Great Atlantic & Pacific Tea Co.*, 374 Mich. 142, 132 N.W.2d 75 (1965). See also *Presnell v. Board of County Road Comm'rs*, 105 Mich.App. 362, 306 N.W.2d 516, 518 (1981). The district court therefore erred in granting summary judgment to defendants based on accord and satisfaction.

3. The district court concluded that dismissal without prejudice leaves the issue open to further litigation.

We review de novo a district court's grant of summary judgment, "apply[ing] the same test as that used by the district court in reviewing a motion for summary judgment." *Berlin v. Michigan Bell Tel. Co.,* 858 F.2d 1154, 1161 (6th Cir.1988) citing *Hand v. Central Transport, Inc.,* 779 F.2d 8, 10 (6th Cir.1985). When considering a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the inference to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); see also *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The nonmoving party, nevertheless, bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e).

**5 "The judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, " '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.' " *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512).

Defendants rely on our decision in *Capital Dredge & Dock v. City of Detroit,* 800 F.2d 525 (6th Cir.1986), on the question of the authority of plaintiffs' attorney to settle the case. We stated:

Generally, when a client hires an attorney and holds him out as counsel representing him in a matter, the client clothes the attorney with apparent authority to settle claims connected with the matter.

\*    \*    \*    \*    \*    \*

The court of Michigan have evidently not specifically addressed the apparent authority question in the attorney-client context. In *Michigan National Bank v. Kellam,* supra, the Michigan Court of appeals held that an attorney had no apparent authority to bind a partnership (whose partnership agreement the attorney had written) in dealings with third parties. However, the court noted that the attorney worked for one of the partners individually and was not hired by the partnership to handle the matter that the third parties presented. In *Wells v. United Savings Bank,* 286 Mich. 619, 282 N.W. 844 (1938) and *Peoples State Bank v. Bloch,* 249 Mich. 99, 227 N.W. 778 (1929), the Michigan Supreme Court held that an attorney has no implied authority to settle or compromise a matter, but the court did not reach the question of apparent authority. 800 F.2d at 531.

While we indicated in *Capital Dredge,* 800 F.2d at 532, that Michigan would adopt the general rule set out above, we also noted that the party challenging the agent's authority "has not argued that Altere [the supposed agent] lacked authority to negotiate a settlement." The position of plaintiffs and that of Capital Dredge are, therefore, different in the positions taken before the court concerning authority of an attorney to settle claims without consent of his client. The majority opinion in Capital Dredge conceded that the Michigan courts had rejected an attorney's implied authority to settle without express approval of his client, and "have not specifically addressed the apparent authority question." *Id.* Capital Dredge has only since been cited by one court (a South Dakota state court). It has never been cited by a court within this circuit nor by a Michigan state court. It was clear in Capital Dredge that we were uncertain about the result, if addressed by the Michigan courts. We acknowledge, moreover, that *Michigan National Bank v. Patmon,* 119 Mich.App. 772, 327 N.W.2d 355 (1982), and *Coates v. Drake,* 131 Mich.App. 687, 346 N.W.2d 858 (1984), hold that "a settlement, made by an attorney without prior special authorization ... by the client, is not binding on the client." *Id.* at 532. See also *Gojcaj v. Moser,* 140 Mich. App. 828, 366 N.W.2d 54 (1985) (a case not noted in Capital Dredge; order approving settlement controverted for lack of attorney authority reversed and set aside).

**6 Another case bearing on this question decided by a Michigan court, where a purported settlement had been entered by attorneys in open court, was *Presnell v. Board of County Road Comm'rs.*, 105 Mich. App. 362, 306 N.W.2d 516 (1981). This case, apparently overlooked or in any event not cited by the majority in Capital Dredge, stated:

As another general rule, it has been said that "attorney who has the conduct of a lawsuit is presumed to have authority to act on his client's behalf". *Jackson v. Wayne Circuit Judge,* 341 Mich. 55, 59, 67 N.W.2d 471 (1954). This general rule, however, has not been extended to permit an attorney to compromise a client's claim absent specific authority from the client to do so. In *Henderson v. Great Atlantic & Pacific Tea Co.,* 374 Mich. 142, 147, 132 N.W.2d 75 (1965), the Michigan Supreme Court stated the rule as follows:

"The principle which governs this case is set forth in 66 A.L.R. 107 et seq., as supplemented in 30 A.L.R.2d 944 et seq., as follows:

" 'The almost unanimous rule, laid down by the courts of the United States, both Federal and State, is that an attorney at law has no power, by virtue of his general retainer, to compromise his client's cause of action; but that precedent special authority or subsequent ratification is necessary to make such a compromise valid and binding on the client.' (Citing numerous cases)

" 'The above rule has been adhered to in Michigan in *Eaton v. Knowles,* 61 Mich. 625 [28 N.W. 740 (1886) ]; *Fetz v. Leyendecker,* 157 Mich. 355 [122 N.W. 100 (1909) ]; *Peoples State Bank v. Block,* 249 Mich. 99 [227 N.W. 778 (1929) ]; and most recently in *Wells v. United Savings Bank of Tecumseh,* 286 Mich. 619 [282 N.W. 844 (1938) ]." (Footnote deleted.)

306 N.W.2d at 518.

We believed the "presumed" authority of the attorney discussed in Presnell is akin to the "apparent authority" considered in Capital Dredge, and such presumed authority was held to be insufficient to empower the attorney, without specific authority, to compromise or settle his client's claim.

Under all the circumstances, we hold Capital Dredge [4] is not controlling under the circumstances here.

We conclude that whether plaintiffs authorized Mr. Rusing to settle their claim is a genuine issue of material fact. Because the district court relied on M.C.R. 2.507(H), it never properly considered whether plaintiffs gave this authority or ratified their attorney's conduct. Plaintiffs did present evidence of a disputed material fact with testimony that neither accepted any offers to settle the controversy. They claimed to have informed Mr. Rusing that they would not accept the sums offered.

We, therefore, REVERSE the district court's summary judgment granted to defendants for the reasons stated. Upon REMAND, the district court should grant Florence Cement's motion to amend its answer to conform to the evidence.

[redacted]

4. *Terrain Enterprises v. Western Cas. & Sur. Co.,* 774 F.2d 1320 (5th Cir.1985), relied upon by Capital Dredge, involved a challenged settlement but the party controverting its attorney's authority "did not offer any proof that Mackbee [its attorney] did not have authority to act on their behalf." *Id.* at 1322. This factual situation is obviously different from the instant controversy and constitutes no authority to sustain the settlement at issue here.