ANTHONY LIQUORI ET AL. *v.* COSMO GIORDANO ET AL.

SUPERIOR COURT      JUDICIAL DISTRICT OF      FILE NO. 351795S
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed September 30, 1991

*Dwyer, Sheridan & Fitzgerald,* for the named plaintiff.

*Susman, Duffy & Segaloff,* for the defendants.

WAGNER, J. This action was commenced on September 23, 1988, for personal injuries resulting from an automobile accident that occurred on September 25, 1986.

The defendants claim in their special defense that on February 27, 1987, the named plaintiff, Anthony Liquori, signed a release of all claims against the defendants. The defendants now move for summary judgment on this ground. The defendants claim that Liquori was represented at the time by Attorney Steven Linial of the Massachusetts bar, that a check in the amount of $7200 was made payable to Liquori and Linial and was forwarded to Linial, that the check was endorsed and cashed, and that the release signed by Liquori was received from Linial.

Liquori claims that he never authorized any settlement of his claim, that he never saw or endorsed the settlement check, and that he did not sign the release.

It is agreed that Linial is unavailable at this time.

Summary judgment is a method of resolving litigation when pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 384; *Wilson* v. *New Haven,* 213 Conn. 277, 279, 567 A.2d 829 (1989). In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. *Nolan* v. *Borkowski,* 206 Conn. 495, 500, 538 A.2d 1031 (1988).

In support of their motion, the defendants claim that the only material question is whether Liquori was represented by Linial, and that since that fact is undisputed, judgment must be entered for them as a matter of law.

There are obviously good reasons in connection with the expeditious settlement of claims for a defendant and his insurance company to rely on the representation of a plaintiff's attorney as to the conclusiveness of a settlement and the authenticity of a signature on the proffered release and settlement check. On the other hand, it would be harsh justice, indeed, to bar an injured person who has never authorized or received the fruits of a settlement from having a day in court against an alleged tortfeasor, simply because that person had engaged an attorney who turned out to be criminally dishonest.

The defendants claim that Massachusetts law applies to the construing of the release, since Liquori lived in and executed the release in Massachusetts, but no apposite precedents either in Connecticut or in Massachusetts have been drawn to the attention of the court. The Massachusetts decision of *Richmond* v. *Shuster Express, Inc.,* 16 Mass. App. 989, 454 N.E.2d 494 (1983), deals with the *effect* of a release, not a

fraudulent release. *Acheson* v. *White,* 195 Conn. 211, 213, 487 A.2d 197 (1985), citing *Cole* v. *Myers,* 128 Conn. 223, 228, 21 A.2d 396 (1941), and other cases including the Massachusetts case of *Vaughn* v. *Robbins,* 254 Mass. 35, 36, 149 N.E. 677 (1925), suggests that an attorney who is authorized to represent a client in litigation does not automatically have either implied or apparent authority to settle or otherwise to compromise the client's cause of action.'

A review of case law from other states indicates that a decided majority of decisions in the United States hold that an attorney derives from a bare general retainer no power to compromise his client's cause of action. See note, "Attorney and Client—Scope of Attorney's Authority—Client Bound by Wrongful Settlement of Claim," 56 Mich. L. Rev. 437 (1958).

Two cases in Florida and Michigan strikingly similar to the present case have held that an injured party is not barred from pursuing a lawsuit where it appeared that the plaintiff's former attorney, without knowledge or consent of the client, negotiated a settlement with the defendant's insurer, forged the release, cashed the settlement check after forging the client's signature and absconded with the funds. *Nehleber* v. *Anzalone,* 345 So. 2d 822 (Fla. App. 1977); *Henderson* v. *Great Atlantic & Pacific Tea Co.,* 374 Mich. 142, 132 N.W.2d 75 (1965). In *Nehleber,* the court observed that the insurance company, if required to make a double payment, was not without remedy, since it could look to the bank on the forged endorsement.

In a Rhode Island case, *Cohen* v. *Goldman,* 85 R.I. 434, 132 A.2d 414 (1957), however, also quite similar to the present case, in the absence of any claim that the settlement was unfair, the court dismissed the plaintiff's claim. The court found that the plaintiff's conduct

in engaging an attorney, who forged his signature on a release and a check and absconded with the proceeds, created a situation that justified the defendant in relying on the apparent authority of the attorney "namely, the compromise of the case and the filing of the settlement stipulation." Id., 439. The court stressed that in a situation involving "two innocent parties whose rights have been violated by the same person, namely, the agent of the plaintiff," it is the principal who should suffer. Id.

The *Cohen* analysis of "two innocent parties" was sharply criticized as "nebulous" and "unsound" in "Attorney and Client—Scope of Attorney's Authority—Client Bound by Wrongful Settlement of Claim," 56 Mich. L. Rev. 437 (1958), and squarely considered and rejected in *Henderson*. The better analysis would seem to rest on the proposition that the scope of authority of an attorney, express or implied, is essentially a problem governed by the law of agency as applied to the special circumstances of the attorney-client relationship in a particular case. See M. Pirsig, Professional Responsibility (1970), p. 125 comment; W. Seavey, Law of Agency (1964) § 31.

Since there appears to be a dispute of material fact regarding the details of the attorney-client relationship in the present case, specifically, the extent to which the plaintiff knew of the settlement, signed the release or endorsed the check, the motion for summary judgment must be denied. *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 111, 491 A.2d 368 (1985).

The motion for summary judgment is denied.