[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO ENFORCE SETTLEMENT AGREEMENT
CT Page 16331
The named plaintiff, a minor, and his father were originally represented by Alberto V. Zappala, who as of this writing is serving a sentence in a Federal Correctional Institution. The case arose out of an incident in which the minor plaintiff, who was riding a bicycle at the time, is alleged to have been injured due to the negligence of the named defendant, who was operating a motor vehicle. The case was placed in the court's mandatory arbitration program pursuant to General Statutes §52-549u, et seq.
Only Zappala and the defendants' attorney appeared at the arbitration. They agreed upon an oral representation of the evidence, and the arbitrator found in favor of the plaintiff. The arbitrator concluded that the plaintiff's damages amounted to $8000 but assessed comparative fault of 25% to the plaintiff, resulting in a total award of $6000. Before written notification of that award was even filed, however, the attorneys agreed to settle the case for that sum, and Zappala provided defendants' counsel with a release. The plaintiff claims, and defendants do not dispute, that Zappala forged the name of the minor plaintiff's father on the release. A settlement check was delivered to Zappala, who cashed it and apparently pocketed the proceeds. his undisputed that the plaintiffs were notified neither of the arbitration proceeding nor of its result.
In the meantime, the arbitrator filed his memorandum of decision. No timely claim for a trial de novo having been filed, judgment was entered in accordance with the arbitrator's award.
The plaintiffs eventually hired new counsel who discovered that a judgment had been entered and filed a motion to set it aside. The defendants objected on the basis that the case had in fact been settled for the $6000 judgment amount and that the judgment should therefore stand. Following oral argument, the undersigned construed the issue before him narrowly, concluding that the judgment had entered as a result of mistake, namely the failure to file a withdrawal following the "settlement" of the case in time to prevent the entry of a judgment 20 days after the filing of the arbitrator's decision. In granting the motion to set aside the judgment, however, the undersigned wrote.
 The court recognizes that this is probably not the end of the matter. This motion was presented to the undersigned as the plaintiffs' motion to open, but it was argued to the court in part as though it were a CT Page 16332 motion to enforce a settlement agreement. See, e.g., Audubon Parking Associates Limited Partnership v. Barclay and Stubbs, Inc., 225 Conn. 804 (1993). Under all the circumstances of this case, the court feels that it should decide only the motion squarely placed before it, namely the motion to open, without prejudice to the right of the defendant to seek to have its settlement agreement with the plaintiff enforced as a judgment. (Memorandum of Decision dated September 12, 2000).
The defendants' motion to enforce the settlement agreement is now squarely before the court. They contend that they entered into a settlement agreement with plaintiffs' counsel, who was acting with apparent authority to do so, and that they have in fact paid the sum of $6000 in a good faith effort to settle the case. They argue persuasively that it is not their fault that the plaintiffs' lawyer turned out to be a thief. They also contend that the settlement was a fair one and that it would be unjust for them, who acted in good faith throughout this process, to be punished by having to return to court to defend the case yet again and possibly either to settle again or to have to pay damages following a verdict.
The plaintiffs first argue that the settlement was unfair and that it undervalued the minor plaintiff's injuries. More significantly, they contend that they were totally unaware of either the arbitration proceeding or of the purported settlement that arose from it, that they did not authorize such a settlement and that they never received any of the proceeds of it. The judgment against them having been opened, they argue that they should be permitted to pursue their underlying claim.
The seminal case of Audubon Parking Associates Limited Partnership v.Barclay and Stubbs, supra, did not purport to address a situation such as this. It has been cited in numerous cases, including several authored by the undersigned, in support of the notion that when parties in good faith enter into an unambiguous settlement agreement to resolve a pending case, and one side later reneges, the court has the power to enforce the agreement as a judgment. Most frequently, this occurs when the defendant fails to pay, or to pay in full, the agreed upon settlement amount.
Not surprisingly, Audubon Parking Associates did not specifically contemplate the situation in which a plaintiff agrees to compromise a claim without the authority of his clients and then pockets the proceeds himself without telling the plaintiffs. The defendants, however, argue that the same principles should be applied, and they point out further that if the plaintiffs were in fact maltreated by their former lawyer, CT Page 16333 they have a number of potential remedies, including actions for malpractice or fraud and conversion as well as a potential claim to the client security fund managed by the Connecticut Bar Association. The plaintiffs counter that with Zappala in prison and allegedly owing in excess of a million dollars to all those whom he has defrauded, at least some of these potential remedies are rather hollow.
Primarily, however, the plaintiffs contend that they did not authorize the purported settlement agreement and that they therefore should not be bound by it. The settlement may have been unambiguous in Zappala's mind, but it was neither an agreement nor unambiguous as to them. The unfortunate question which this court is left to decide therefore, is: upon whom should the burden of Zappala's malfeasance fall, the plaintiffs who never authorized him to settle or the defendants who reasonably relied upon his apparent authority to do so?
Although not cited by either party in their memoranda of law, there is a Connecticut case which has previously addressed a similar situation. InLiguori v. Giordano, 42 Conn. Sup. 122, 603 A.2d 782 (1991) the defendant contended that the plaintiff had signed a release of all claims and that they had paid $7200 to the plaintiff's attorney, a check which was endorsed and cashed. The plaintiff claimed that he never authorized the settlement, nor saw nor endorsed the check, nor signed the release. The court concluded that it "would be harsh justice . . . to bar an injured person who had never authorized or received the fruits of a settlement from having a day in court against an alleged tortfeasor, simply because that person had engaged an attorney who turned out to be criminally dishonest." Although Liguori was a Superior Court decision and therefore not binding on the undersigned, it is nonetheless instructive. In his decision, Judge Wagner pointed out that a review of case law from other states indicates that a decided majority of decisions in the United States hold that an attorney derives from a bare general retainer no power to compromise his client's cause of action" and discussed to similar cases in which "it appeared that the plaintiff's former attorney, without knowledge or consent of the client, negotiated a settlement with the defendant's insurer, forged the release, cashed the settlement check after forging the client's signature and absconded with the funds." See,Nehleber v. Anzalone, 345 So.2d 822 (Fla.App. 1977); Henderson v. GreatAtlantic and Pacific Tea Co., 374 Mich. 142, 132 N.W.2d 75 (1975). Both these cases permitted the plaintiffs to proceed with their causes of action.
Liguori came before Judge Wagner as a motion for summary judgment, and because there was "a dispute of material fact regarding the details of the attorney-client relationship in the present case, specifically, the extent to which the plaintiff knew of the settlement, signed the release CT Page 16334 or endorsed the check," the motion summary judgment had to be denied. In this case, there has been no dispute that the plaintiff did not know of the settlement, did not sign the release, did not endorse the check, and did not share in the proceeds. Although Judge Wagner did not considerLiguori in the light of Audubon Parking Associates, supra, which had not yet been decided, the implication is that with there being no dispute as to the plaintiffs' lack of knowledge of the settlement or participation in it, Judge Wagner would have ruled in favor of the plaintiff on the present motion as well.
Cohen v. Goldman, 85 R.I. 434, 132 A.2d 442 (1957) is also a similar case, but one which reached a contrary result. The court there concluded that where "two innocent parties whose rights had been violated by the same person, namely the agent of the plaintiff," it is the principal who should suffer." That reasoning, however, was sharply criticized in a Note, "Attorney and Client — Scope of Attorney's Authority — Client Bound by Wrongful Settlement of Claim," 56 Michigan Law Rev. 437 (1958), based on the notion that the Rhode Island court seemed to imply that merely hiring an attorney confers on him apparent authority to settle a claim without specific authority to do so. The Henderson case cited above specifically cited this article with approval and rejected the reasoning behind Cohen.
Nehleber v. Anzalone, supra, coincidentally also involved a $6000 settlement. In permitting the plaintiff to proceed, the court there noted that the tortfeasor's insurance company was not without a remedy. "It can look to its bank to recover the money improperly paid by the bank on the forged endorsement. The bank in turn may have a cause of action against the attorney who forged the endorsement and actually received the $6000." This court, however, recognizes sadly that in this case, such rights are about as hollow as those which the plaintiffs have against Zappala.
The court is therefore faced with a situation in which its decision will impose an undeserved detriment on one of the parties. Enforcement of the settlement agreement means that an injured plaintiff who acted in good faith throughout these proceedings will have lost his right to recover damages. Refusal to enforce the settlement agreement will result in the defendants, and their insurer, incurring additional expenses to defend the action and, perhaps, once again to have to pay damages as the result of settlement or verdict. The lessons learned from the courts in Michigan, Florida and Rhode Island, however, suggest that the court inLiquori did the right thing by not requiring the plaintiff to lose his cause of action solely because of his attorney's malfeasance. The result to the defendants is admittedly harsh, but the balance is more fairly struck by maintaining the plaintiffs' right of access to the courts in order to pursue their underlying claim. CT Page 16335
The motion to enforce the settlement agreement as a judgment is therefore denied.
Jonathan E. Silbert, Judge
[EDITORS' NOTE: The case formally on this page is now located on CT Page 15914] CT Page 16336
[EDITORS' NOTE: CT Page 16336 through 16343 is empty] CT Page 16344